STATE OF NORTH CAROLINA v. MARK TYRON SOYARS

No. 564A90

(Filed 17 July 1992)

1. **Criminal Law § 78 (NCI4th)— kidnapping, murder, robbery— motion for change of venue—pretrial publicity—denied**

There was no error in the denial of a motion for change of venue for pretrial publicity in a prosecution for kidnapping, murder, and robbery where defendant's jury was composed of eight persons who had prior knowledge of the case and four who did not, and all of the jurors who had prior knowledge stated that they had formed no opinion and could set aside what they had heard or read and base their verdict on the evidence presented in court. The factors cited in *State v. Jerrett*, 309 N.C. 239, are essential but not exhaustive, and *Jerrett* is distinguishable on the facts.

**Am Jur 2d, Venue § 60; Criminal Law §§ 372, 378.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

2. **Jury § 6.3 (NCI3d)— jury selection—questioning on accomplice testimony—no prejudicial error**

There was no prejudice in a prosecution for kidnapping, murder, and robbery where the court during voir dire sustained the State's objection to a question concerning whether the jurors could follow the court's instructions on accomplice testimony, but the court sustained the objection only as to defendant's presentation of the instruction and permitted defendant to ask an almost identical question regarding the jurors' ability to apply the court's instruction.

**Am Jur 2d, Jury § 202.**

3. **Evidence and Witnesses § 754 (NCI4th)— allegedly illegal search—evidence admitted—cumulative—not prejudicial**

There was no prejudicial error in a prosecution for kidnapping, murder and robbery from the admission of evidence seized from defendant's backpack and duffle bag where the evidence

STATE v. SOYARS

[332 N.C. 47 (1992)]

was merely cumulative and corroborative of testimony of other witnesses, including defendant.

**Am Jur 2d, Evidence § 256.**

4. **Criminal Law § 442 (NCI4th)— prosecutor's argument—role of jury—conscience of community—no error**

There was no error in a prosecution for kidnapping, murder and robbery from the prosecutor's argument to the jury that it was acting as the voice and conscience of the community. The impropriety in *State v. Scott*, 314 N.C. 309, did not lie in the statements that the jury had become the representatives of the community, but in the invocation of public sentiment about drinking and driving and the accidents caused by such behavior.

**Am Jur 2d, Trial § 569.**

**Prejudicial effect of prosecuting attorney's argument to jury that people of city, county, or community want or expect a conviction. 85 ALR2d 1132 supp. sec. 1.**

5. **Jury § 6.1 (NCI3d)— individual voir dire and sequestration of prospective jurors—denied—no abuse of discretion**

The trial court did not abuse its discretion in denying a motion for individual voir dire and sequestration of potential jurors due to pretrial publicity. N.C.G.S. § 15A-1214(j).

**Am Jur 2d, Trial §§ 1494-1496.**

**Separation of jury in criminal case before introduction of evidence—modern cases. 72 ALR3d 100.**

6. **Criminal Law § 107 (NCI4th)— kidnapping, murder, robbery—in camera examination of law enforcement files**

The trial court did not err in a prosecution for kidnapping, murder and robbery by denying defendant's motion for access to investigative files or for an in camera inspection where defendant was provided with all of an accomplice's statements prior to trial, the court ordered the State to produce all exculpatory evidence, defendant was entitled to and received the statements of the prosecution's material witnesses, and defendant was unable to show the existence of any *Brady* evidence denied him.

**Am Jur 2d, Criminal Law § 830.**

STATE v. SOYARS

[332 N.C. 47 (1992)]

Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.

Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.

7. Criminal Law § 107 (NCI4th) — kidnapping, murder, robbery — accomplice — disclosure of psychiatric records — denied

A defendant in a kidnapping, murder, and robbery prosecution was deprived of no information or evidence that would have materially assisted his defense or have led to a different result at trial when the trial court denied his motion for discovery of the psychiatric evaluation of an accomplice.

Am Jur 2d, Criminal Law § 830.

Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.

Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Albright, J.*, at the 16 April 1990 Criminal Session of Superior Court, ROCKINGHAM County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 9 March 1992.

*Lacy H. Thornburg, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was indicted on counts of first-degree kidnapping, robbery with a dangerous weapon, and first-degree murder. The jury convicted defendant on all counts. In a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended, and the trial court imposed, a sentence of life imprisonment for the murder conviction. Because the jury found defendant guilty of first-degree murder under the felony murder rule, the trial court arrested judgment on the kidnapping and robbery convictions. De-

fendant appealed as of right. We conclude that defendant received a fair trial, free from prejudicial error.

The State presented the following evidence tending to show that on 18 July 1989, after robbing and kidnapping Nan Barnard Doyle, defendant killed her:

Byron Poindexter, defendant's cousin, testified that while giving defendant a ride on 17 July 1989, defendant asked Poindexter to drive by Nan's Hallmark Shop in the Meadow Green Shopping Center, Nan Doyle's place of business. At that time defendant remarked that he might have to rob the business because he needed money and might want to leave town. Defendant also stated that a robbery would be relatively easy because Nan worked alone and that he would consider robbing her near closing time. After Poindexter expressed his disapproval, defendant replied that it was "just a thought."

Donald William (Billy) Campbell, Jr. (Campbell), who was also charged with the murder of Nan Doyle, but was tried separately, testified that he first met defendant on 10 July 1989. Campbell, his wife Lisa Campbell, defendant, and Julie Medley, defendant's girlfriend, met a number of times during the following week. Campbell and defendant discussed the possibility of robbing a poker house, and Campbell observed that defendant owned a .45 caliber gun.

On 18 July 1989, defendant telephoned Campbell and asked that he pick him up at the Mar-Gre Motel where he had been staying. Defendant had no money and wanted to leave the motel. Campbell met defendant around 6:30 a.m. and decided not to go to work. The two men drove around the area and returned to Campbell's apartment in the afternoon. Lisa Campbell and Julie Medley arrived at approximately 4:00 p.m. Following an argument about Campbell's absence from work, Lisa told him to leave and come back later to pick up his clothes. Campbell took his .25 caliber handgun and left. Defendant joined him. Defendant's belongings, which included his .45 caliber handgun, were still in Campbell's car.

Campbell testified that defendant then directed him to the Meadow Green Shopping Center, and they proceeded directly to Nan's Hallmark Shop. They entered the shop, and defendant asked Nan Doyle when it closed. When a police car passed by, defendant became nervous and decided to leave. Campbell and defendant drove away and agreed to rob the store. They returned to the

shop before closing. Defendant asked Campbell to give him the .25 caliber gun because it could be more easily concealed. Defendant and Campbell reentered the shop, whereupon defendant told Nan he was robbing her, shook the gun at her, and told her to put the money in a plain bag. After Nan gave him the money, defendant told her she would have to leave with them. Campbell drove out of town; the victim sat on defendant's lap. They stopped along a gravel road adjacent to some woods. Defendant took the victim into the woods, telling her he was going to tie her up. Campbell waited in the car for about ten minutes. He heard three gunshots, and then defendant came running out of the woods carrying a woman's watch. They drove away, and defendant told Campbell he had had to kill Nan. Defendant looked through Nan's purse and then threw it into the river. Campbell received half of the $1000 stolen from the shop.

While driving from the area later that evening, Campbell and defendant passed Lisa and Julie and pulled over to talk to them. Defendant got out of the car to talk to Julie. Her testimony revealed that defendant gave her a gold bracelet and a jade ring which were later identified as the victim's. Campbell and defendant drove on to Virginia and registered at a motel. While defendant was showering, Campbell left, taking his .25 caliber handgun with him. On 25 July 1989, Campbell informed authorities of the location of the victim's body.

Law enforcement officials discovered the body that day in an abandoned house in a densely wooded area just outside Eden. Evidence collected at the scene included the victim's personal belongings and three empty .25 caliber cartridge cases. A forensic pathologist identified two gunshot wounds to the head and one to the neck as the cause of death. Three small caliber bullets were removed from the body. A State Bureau of Investigation forensic firearms expert concluded that one of the bullets came from Campbell's pistol, but was unable to attribute the other two bullets to a particular weapon.

Defendant testified that he did not murder Nan Doyle. He confirmed that he spent 18 July 1989 with Campbell, but contended that after Campbell and Lisa argued, he accompanied Campbell to Nan's Hallmark Shop, went in briefly with him, and then returned to Campbell's apartment. When they returned they found a note from Lisa telling Campbell to take his things and leave.

Campbell left the apartment, and defendant stayed behind. Campbell returned approximately an hour later with his pistol in hand and a grocery bag. Later, both men left the apartment. In Campbell's car defendant noticed a ring, bracelet, and watch, and he asked Campbell if he could buy them from him. Campbell told defendant he could have the ring and watch. Defendant then gave them to Julie when they met the women along the road. The two men proceeded to Virginia, where Campbell later left defendant at the motel.

[1] In his first assignment of error, defendant contends the trial court erred in denying his pretrial and renewed motions for change of venue or, in the alternative, for a special venire. Defendant argues that he could not obtain a fair and impartial trial in Rockingham County due to pretrial publicity and that the denial of these motions infringed on his federal and state constitutional rights. For the reasons below, we hold that the trial court properly denied the motions.

The relevant statute regarding motions for change of venue states:

If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:

(1) Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or

(2) Order a special venire under the terms of G.S. 15A-958.

N.C.G.S. § 15A-957 (1988).

Three basic principles regarding the implementation of this statute are well settled. (1) " 'Due process requires that an accused receive a trial by an impartial jury free from outside influences.' " *State v. Boykin*, 291 N.C. 264, 269, 229 S.E.2d 914, 917 (1976) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362, 16 L. Ed. 2d 600, 620 (1966) ); *see also State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983). Thus, where there is a reasonable likelihood that prejudicial pretrial publicity will prevent a fair trial, the trial court must transfer the case to another county. N.C.G.S. § 15A-957. (2) The

STATE v. SOYARS

[332 N.C. 47 (1992)]

burden of showing prejudice that prevents a fair trial is on the defendant. *State v. Dobbins*, 306 N.C. 342, 344, 293 S.E.2d 162, 163 (1982); *State v. Boykin*, 291 N.C. at 269, 229 S.E.2d at 917-18. (3) A motion for change of venue is addressed to the sound discretion of the trial judge whose ruling will not be overturned absent an abuse of discretion. *State v. Dobbins*, 306 N.C. at 344, 293 S.E.2d at 164; *State v. Oliver*, 302 N.C. 28, 37, 274 S.E.2d 183, 189 (1981).

In support of his first motion for change of venue, defendant submitted copies of approximately eighteen newspaper articles covering the victim's disappearance and the ensuing arrests. The publicity included references to two prior kidnappings from area shopping centers, a story on defendant's criminal history, and a story on the victim's grandfather who had been murdered more than fifty years earlier under uncannily similar circumstances. In a hearing on the motion, two Eden police officers testified that the event precipitated a large number of phone calls from concerned citizens and that the content of the calls reflected the spread of rumors "like wildfire." A local attorney opined that, given community sentiment, a fair trial could not be had in Rockingham County. The motion for change of venue and the motion for special venire were denied. Defendant later renewed the motion, supporting it with articles published since the denial of his first motion. The trial court denied defendant's renewed motion, concluding, *inter alia*, that the news articles were not unduly inflammatory and that defendant had failed to demonstrate that the publicity would prevent him from obtaining a fair trial. The trial court denied defendant's subsequent and final renewed motion on similar grounds.

Standing alone, evidence of pretrial publicity does not establish a reasonable likelihood that a fair trial cannot be had. " 'This court has consistently held that factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue.' " *State v. Madric*, 328 N.C. 223, 229, 400 S.E.2d 31, 35 (1991) (quoting *State v. Gardner*, 311 N.C. 489, 498, 319 S.E.2d 591, 598 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985) ). Having reviewed the news articles submitted by defendant, we conclude that they are primarily factual in nature. Most of the articles address the sequential events of the murder, which began with the victim's disappearance, continued through the arrests, and terminated with the trial proceedings. Some of the publicity, however, may be deemed inflammatory. One article

STATE v. SOYARS

[332 N.C. 47 (1992)]

focused on defendant's criminal record, and others emphasized the community's shock at the disappearance of a well-regarded businesswoman. Even so, the burden remains on defendant to show that it was reasonably likely that the jurors would base their decisions on pretrial information rather than on the evidence presented at trial. *State v. Hunt*, 325 N.C. 187, 199, 381 S.E.2d 453, 460 (1989). "Where, as here, a jury has been selected to try the defendant and the defendant has been tried, the defendant must prove the existence of an opinion in the mind of *a juror who heard.his case* that will raise a presumption of partiality." *State v. Madric*, 328 N.C. at 228, 400 S.E.2d at 35.

In further support of his argument, defendant observes that the majority (approximately eighty-five percent) of the prospective jurors had been exposed to media coverage of the murder, and that some of these jurors served on his jury. Exposure to pretrial publicity does not necessarily render a juror incapable of impartiality. The United States Supreme Court has noted that

> [i]n these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 722-23, 6 L. Ed. 2d 751, 756 (1961).

This Court has noted that jurors' responses to questions during voir dire provide "[p]erhaps the most persuasive evidence that the pretrial publicity was not prejudicial or inflammatory." *State v. Richardson*, 308 N.C. 470, 480, 302 S.E.2d 799, 805 (1983). When each juror states unequivocally that he can set aside what he has heard previously about a defendant's guilt and arrive at a determination based solely on the evidence presented at trial, a defendant fails to establish an abuse of discretion by the trial court in refusing to grant a change of venue. *State v. Corbett*, 309 N.C. 382, 396, 307 S.E.2d 139, 148 (1983); *see also State v. Madric*, 328

N.C. at 230, 400 S.E.2d at 35-36 (no abuse of discretion where each of the five jurors exposed to pretrial publicity gave such unequivocal answers).

The record shows that defendant's jury was composed of eight persons who had prior knowledge of the case and four who did not. When questioned during the selection process, all of the jurors who had prior knowledge stated that they had formed no opinion and could set aside what they had heard or read and base their verdict on the evidence presented in court. Given these statements, the trial court did not abuse its discretion in concluding that the evidence of these jurors' prior knowledge of the case failed to establish a reasonable likelihood that they would base their decisions on pretrial information.

Finally, defendant argues that he has established the need for a change of venue in the same manner as the defendant in *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339, a case in which we held the trial court's denial of a motion for change of venue to be improper. Defendant contends that he fulfilled the three conditions requisite for a change of venue enumerated in *Jerrett*, where we stated:

> [D]efendant, in meeting his burden of showing that pretrial publicity precluded him from receiving a fair trial, must show that jurors have prior knowledge concerning the case, that he exhausted peremptory challenges and that a juror objectionable to the defendant sat on the jury.

*Id.* at 255, 307 S.E.2d at 347-48. Defendant erroneously interprets this quote to mean that a showing of these three factors warrants a change of venue. A reading of *Jerrett* in its entirety and a review of cases prior to *Jerrett* make it clear, however, that although these three factors are essential, they are not exhaustive. In *Jerrett*, the Court went on to say: "In deciding whether a defendant has met his burden of showing prejudice, it is relevant to consider that the chosen jurors stated that they could ignore their prior knowledge or earlier formed opinions and decide the case solely on the evidence presented at trial." *Id.* In other cases, the Court has referred to the *absence* of these factors to show that a defendant failed to meet his burden of proof. *See State v. Dobbins*, 306 N.C. at 345, 293 S.E.2d at 164; *State v. Harrill*, 289 N.C. 186, 191, 221 S.E.2d 325, 328-29, *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1211 (1976). Defendant's inference that the mere *presence* of all three warrants a change of venue, however, is incorrect.

Further, *Jerrett* is distinguishable on the facts. In *Jerrett*, defendant presented extensive testimony from members of the media, a sheriff, a local magistrate and three attorneys that a fair trial could not be had in Allegheny County. The Court noted that the county, with a population of approximately 9,600, was small, rural, closely-knit, "in effect, a neighborhood." One third of the potential jurors knew or were familiar with the victims or their family; four of the jurors who served were at least familiar with the victims' relatives, and six jurors were at least familiar with the State's witnesses. More importantly, the Court reversed the trial court's ruling in part because the record revealed undue emphasis on the right of county residents to try the case where the crime was committed. *State v. Jerrett*, 309 N.C. at 254, 307 S.E.2d at 347.

Here, although he presented similar evidence from media representatives and a member of the legal community, defendant has not established a reasonable likelihood that pretrial publicity prevented a fair and impartial trial in Rockingham County. Thus, the trial court did not abuse its discretion in denying his motion for change of venue.

[2] In his next assignment of error, defendant contends the trial court erred in sustaining the State's objection to a question defendant posed to prospective jurors regarding their ability to apply instructions on accomplice testimony. Defendant argues that the ruling prevented him from obtaining information necessary to exercise his "for cause" and peremptory challenges intelligently and thereby secure an impartial jury. We conclude that there is no merit in this contention.

Both the State and the defendant have the right to question prospective jurors to determine their fitness and competency to serve. N.C.G.S. §§ 9-15(a) (1986), 15A-1214(c) (1988). This right serves a double purpose — to ascertain whether grounds for challenge for cause exist and to enable counsel to exercise peremptory challenges intelligently. *State v. Allred*, 275 N.C. 554, 169 S.E.2d 833 (1969). However, the extent and manner of counsel's inquiry rest within the trial court's discretion; thus, to establish reversible error, the defendant must show prejudice in addition to a clear abuse of discretion. *State v. Parks*, 324 N.C. 420, 378 S.E.2d 785 (1989); *State v. Young*, 287 N.C. 377, 214 S.E.2d 763 (1975), *death penalty vacated*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976); *State v. Bryant*,

282 N.C. 92, 191 S.E.2d 745 (1972), *cert. denied*, 410 U.S. 958, 35 L. Ed. 2d 691, *and cert. denied*, 410 U.S. 987, 36 L. Ed. 2d 184 (1973).

The question the trial court refused to allow follows:

[DEFENSE COUNSEL]: This case, as the District Attorney indicated, is a case in which there is to be testimony by the co-defendant, Donald William Campbell, otherwise known as Billy Campbell and he was also charged with these offenses and the Court will give you certain instructions regarding . . . accomplice testimony. Basically those instructions will include instructions that an accomplice is considered by the law to have an interest in the outcome of the case and you should examine the testimony in whole or in part and you should treat what you believe the same as you would treat any other believable evidence in court.

Now I ask you is there anyone on the jury as it is presently constituted that could not follow that instruction? In other words, that you should scrutinize that testimony because he has an interest in the case. Anybody that could not follow that instruction?

[PROSECUTOR]: Objection.

COURT: What is the objection?

[DEFENSE COUNSEL]: Your Honor, I was making an inquiry, if they could follow the Court instructions about accomplice's testimony and I read the accomplice testimony rule.

COURT: Objection is sustained as to reading law to the jury, that is for the Court.

[DEFENSE COUNSEL]: Then could each of you follow the Court's instructions with regard to the accomplice's testimony? If you could raise your hand at this time if you could follow the Court's instructions in that regard.

We conclude that defendant has failed to show prejudice from the court's ruling. It is clear that defendant was interested in determining whether there were any prospective jurors who could not follow the "accomplice testimony" instruction. The trial court sustained the objection only as to defendant's presentation of the instruction, and it permitted defendant to ask an almost identical question regarding the jurors' ability to apply the court's instruc-

tion. There is no indication that any prospective juror was unable to do so. A complete review of the jury selection voir dire reveals that the trial court was cooperative and tolerant of both parties' extensive questioning. This assignment of error is overruled.

[3] Next, defendant contends the trial court committed reversible error in denying his motion to suppress evidence which was recovered by the Rockingham County Sheriff's Department at the time of his arrest. On 24 July 1989, law enforcement officers stopped the truck in which defendant was riding and directed him to exit the vehicle. After handcuffing and shackling defendant and placing him in the police car, the officers seized defendant's duffle bag and backpack from the truck. Defendant argues that evidence from the bags was obtained by an unreasonable search and seizure; therefore, its admission at trial violated his federal and state constitutional rights. Assuming, *arguendo*, that the evidence should have been suppressed, we conclude that given its nature, any error in its admission was harmless beyond a reasonable doubt and does not entitle defendant to a new trial.

"Error committed at trial infringing upon a defendant's constitutional rights is presumed to be prejudicial and entitles him to a new trial unless the error committed was harmless beyond a reasonable doubt." *State v. Brown*, 306 N.C. 151, 164, 293 S.E.2d 569, 578, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982); *see also* N.C.G.S. § 15A-1443(b) (1988). The United States Supreme Court, in the case in which it established this standard, explained that in essence, the question is " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173 (1963)), *reh'g denied*, 386 U.S. 987, 18 L. Ed. 2d 241 (1967).

The evidence seized from defendant's duffle bag and backpack consisted of a receipt from the Arborgate Inn in Christianburg, Virginia, a receipt from the Innkeeper in Eden, three Greyhound bus receipts, and defendant's .45 caliber pistol. It is clear from the record that this evidence was merely cumulative. It corroborated the testimony of other witnesses and that of the defendant himself. Defendant testified that prior to the murder he had been living in motels in Eden, that the night of the murder he stayed at a motel in Virginia, and that afterwards he went to Atlanta by

STATE v. SOYARS

[332 N.C. 47 (1992)]

bus to meet his girlfriend. He also stated that he owned a .45 caliber handgun. The State's evidence indicated that the murder weapon was a .25 caliber handgun. Testimony from defendant's girlfriend, motel and bus station employees, and Billy Campbell also included the facts supported by the evidence from the bags. Moreover, the evidence did not in any manner directly link defendant to the crime. Its most important role was to establish defendant's whereabouts after the murder. Given that other competent and admissible evidence tended to prove the same facts as the allegedly improperly obtained evidence, we conclude with confidence that any error resulting from admission of the evidence was harmless beyond a reasonable doubt.

[4] Defendant next argues that the trial court erred in overruling his objection to a portion of the prosecutor's closing argument. He avers that the prosecutor's remarks impermissibly urged the jury to render a verdict based on the outrage of the community rather than the evidence. We find no error in the ruling.

The argument to which defendant objected follows:

[PROSECUTOR]: You know, everyone of you, not just one or two of you, but everyone of you at some point in your adult life you said why don't they do something about violence. Why don't they do something about victim's rights?

[DEFENSE COUNSEL]: Objection to this argument.

[PROSECUTOR]: Your Honor please, the argument is that at some point in their lives they have said why don't they do something about violent crimes, why don't they do something about it.

COURT: Objection is overruled.

[PROSECUTOR]: Ladies and gentlemen, you have heard it said why don't they do something, you know there is no mystical "they" hiding around in this courtroom. Not hiding any place. Just do something about the violent crimes. Jurys [sic] do something about victim's rights. And jurors follow the law.

As evidence of improper argument, defendant also points to the prosecutor's later statement to the jury: "You come here and represent the conscious [sic] of the community."

STATE v. SOYARS

[332 N.C. 47 (1992)]

Trial counsel are granted wide latitude in the scope of jury argument, and control of closing arguments is in the discretion of the trial court. *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987); *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). Further, for an inappropriate prosecutorial comment to justify a new trial, it "must be sufficiently grave that it is prejudicial error." *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977).

Defendant relies on our holding in *State v. Scott*, 314 N.C. 309, 333 S.E.2d 296 (1985), that statements about the sentiments of the citizens of the community are improper and are a basis for reversal when the defendant shows them to be prejudicial. *Id.* at 312-13, 333 S.E.2d at 298. In *Scott*, the prosecutor argued:

> [T]here's a lot of public sentiment at this point against drinking and driving, causing accidents on the highway. And, you know, you read these things and you hear these things and you think to yourself, "My God, they ought to do something about that."
> . . .
>
> . . . .
>
> Well, ladies and gentlemen, the buck stops here. You twelve judges in Cumberland County have become the "they".

*Id.* at 311, 333 S.E.2d at 297.

We emphasized in *Scott* that the impropriety of the prosecutor's argument did not lie in his statements that "the buck stops here" or that the jurors had "become the they." "These statements correctly informed the jury that for purposes of the defendant's trial, the jury had become the representatives of the community." *Id.* The argument became improper, however, when the prosecutor invoked public sentiment about drinking and driving and the accidents caused by such behavior. *Id.* at 312, 333 S.E.2d at 298. The argument went outside the record and could have led the jury to convict the defendant because of accidents caused by other impaired drivers. *Id.* "Further, such statements could only be construed as telling the jury that the citizens of the community sought and demanded conviction and punishment of the defendant. . . . [B]y such arguments, '[t]he State was asking the jury to lend an ear to the community rather than a voice.'" *Id.* (quoting *Prado v. State*, 626 S.W.2d 775, 776 (Tex. Crim. App. 1982)).

STATE v. SOYARS

[332 N.C. 47 (1992)]

The prosecutor's remarks here reminded the jury that for purposes of defendant's trial, it was acting as the voice and conscience of the community. In recent cases we have repeatedly held such arguments permissible. *State v. Artis*, 325 N.C. 278, 329-30, 384 S.E.2d 470, 499 (1989) ("When you hear of such acts . . . you think, 'Well, somebody ought to do something about that.' . . . You are the somebody. . . . You speak for Robeson County . . . ."), *death sentence vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991); *State v. Huff*, 325 N.C. 1, 71, 381 S.E.2d 635, 676 (1989) ("Today, you speak for the people of North Carolina. You are the moral conscience of our community."), *death sentence vacated*, --- U.S. ---, 111 L. Ed. 2d 777 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991); *State v. Brown*, 320 N.C. 179, 203, 358 S.E.2d 1, 18 ("[W]hen you hear of such acts, you say, 'Gee, somebody ought to do something about that.' You know something, Ladies and Gentlemen of the Jury, today you are the somebody that everybody talks about . . . ."), *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). The trial court did not err in overruling defendant's objection to the prosecutor's summation.

[5] Defendant also argues that the trial court erred in denying his motion for individual voir dire and sequestration of prospective jurors. He contends that in light of pretrial publicity which included information inadmissible at trial, individual voir dire was required. We disagree.

"In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C.G.S. § 15A-1214(j) (1988). In *State v. Barts*, 316 N.C. 666, 343 S.E.2d 828 (1986), we recapitulated the established construction of this statute:

> This provision does not grant either party any absolute right. . . . The decision of whether to grant sequestration and individual *voir dire* of prospective jurors rests in the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of an abuse of discretion. . . . A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.

*Id.* at 678-79, 343 S.E.2d at 837 (citations omitted).

STATE v. SOYARS

[332 N.C. 47 (1992)]

Defendant recognizes that this Court has consistently denied relief on this argument. He nevertheless contends that he might have been able to demonstrate more effectively the impact of pretrial publicity on potential jurors if individual voir dire had been allowed. On that basis, he asks that we reconsider our previous holdings. *See, e.g., State v. Reese*, 319 N.C. 110, 119-20, 353 S.E.2d 352, 357 (1987). We decline to do so and accordingly overrule this assignment of error.

[6] Defendant next assigns error to the trial court's denial of his request for an in camera examination of certain law enforcement files. During a pretrial motions hearing, defendant acknowledged that the State had complied with discovery requests for access to each of Billy Campbell's prior written statements. He then sought access to other witnesses' statements, purportedly within law enforcement files, in order to see if they contained evidence exculpating defendant or if they conflicted with any of Campbell's statements. Essentially, defendant argued that because Campbell made at least four different statements which were at times largely inconsistent, any statement made by another witness would contradict Campbell in part, thereby impeaching Campbell and tending to exculpate defendant.

In response to defendant's argument, the court required the District Attorney to provide defendant with copies of any statements made to the officers once the witness testified at trial. The court also ordered the State to provide any statement made by a witness which tended to exculpate defendant. After this ruling, defendant requested that the court conduct an in camera review of the investigative files to search for exculpatory evidence.

Prior to jury selection, defendant renewed his request that the court conduct an in camera inspection of investigative files for exculpatory evidence. The court noted that defendant was in possession of all of Billy Campbell's statements and then determined, after inquiring of the District Attorney, that defendant had been provided with all evidence of an exculpatory nature. The court found facts that defendant's motion constituted a "fishing expedition" involving a search of the entire investigative file in search of exculpatory evidence. The court found that defendant's request was "so broad as to be general in nature" and that it did not suffice as a specific request for disclosure contemplated by *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977).

STATE v. SOYARS

[332 N.C. 47 (1992)]

We conclude that the court did not err in denying defendant's request for access to investigative files or for an in camera inspection. "[N]o statutory provision or constitutional principle requires the trial court to order the State to make available to a defendant all of its investigative files relating to his case . . . ." *State v. McLaughlin*, 323 N.C. 68, 85, 372 S.E.2d 49, 61, *death sentence vacated*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand*, 330 N.C. 66, 408 S.E.2d 732 (1991). A defendant is legally entitled to access to certain portions of the State's evidence prior to trial. By statute, a defendant is entitled to all statements of a codefendant. N.C.G.S. § 15A-903(b) (1988). However, defendant here has made no showing, and does not contend on appeal, that there was a statement by Campbell of which he was deprived.

Defendant is also statutorily entitled to any statement of a witness other than the defendant, in the possession of the State and relating to the subject matter of the witness' testimony, once the witness has testified. N.C.G.S. § 15A-903(f) (1988). If the State wishes to withhold a statement, the court must conduct an in camera review of the statement to determine whether the statement relates to the subject matter of the testimony. However, as defendant's request came prior to the testimony of any of the witnesses, he was not yet entitled to such statements and an in camera review would have been premature. Thus, defendant's right to access to evidence, prior to trial, was not violated.

At this point in the pretrial hearing, defendant's argument became merely a demand for an in camera inspection of the investigative files in search of exculpatory material. Defendant has a constitutional right to the disclosure of exculpatory or favorable evidence. "Impeachment evidence, . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676, 87 L. Ed. 2d 481, 490 (1985); *see also Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). "This rule applies regardless of whether there has been a specific request for the evidence." *State v. Wise*, 326 N.C. 421, 429, 390 S.E.2d 142, 147 (citing *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 113 (1990) ). In *Hardy*, however, we noted:

Under *Agurs*, it appears the prosecutor is constitutionally required to disclose only *at trial* evidence that is favorable and material to the defense. Due process is concerned that the

suppressed evidence might have affected the outcome at trial and not that the suppressed evidence might have aided the defense in preparing for trial.

*State v. Hardy*, 293 N.C. at 127, 235 S.E.2d at 841. In light of the facts that defendant was provided with all of Campbell's statements prior to trial, that the trial court ordered the State to produce all exculpatory evidence, that defendant was entitled to and received the statements of the prosecution's material witnesses, and that defendant is unable to show the existence of any *Brady* evidence denied him, we conclude that there was no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494. Thus, this assignment of error is overruled.

[7] In his last assignment of error, defendant contends the court erred in denying his motion for disclosure of certain psychiatric records and evaluations relating to Billy Campbell. During the pretrial motions hearing, defendant introduced testimony from Dr. Bob Rollins to the effect that Dr. Rollins conducted a pretrial examination of Billy Campbell. Defendant then sought to determine whether evidence tending to exculpate him arose out of Dr. Rollins' testing and evaluation of Campbell. The court conducted an in camera inspection of Dr. Rollins' records and notes and made available to defendant such portions as were favorable to the defense. Certain portions were excised as they did not relate to the subject matter of Dr. Rollins' testimony. The court further ordered the remainder of the file to be sealed and made available for appellate review.

The record on appeal as originally filed with this Court contained no sealed documents. Upon our request, the Clerk of Superior Court of Rockingham County has forwarded to us all sealed documents in her records relating to this case. We have examined these records, and we conclude that the court did not erroneously exclude evidence favorable to defendant. *See State v. Phillips*, 328 N.C. at 18-19, 399 S.E.2d at 301.

Following Billy Campbell's testimony at trial, defendant renewed his motion for discovery of Dr. Rollins' psychiatric evaluation of Campbell. In doing so, defendant contrasted the basis of his earlier motion, his *Brady* right to exculpatory evidence, with the basis for his renewed motion, his statutory right to a testifying

witness' statements relating to the subject matter of his testimony. N.C.G.S. § 15A-903(f). The trial court denied defendant's motion because of Judge Ferrell's earlier in camera inspection of the records, and in light of the provision by Judge Ferrell of certain portions of the psychiatric report and evaluation. Though it appears that the trial court did not distinguish between these bases in making its ruling, we hold that defendant suffered no prejudice. Having reviewed the sealed report and evaluation, we conclude that defendant was deprived of no information or evidence that would have materially assisted his defense or have led to a different result at trial. Thus, we overrule this assignment of error.

No error.