STATE v. LYNCH

[343 N.C. 483 (1996)]

No. 349A95

(Filed 13 June 1996)

**1. Criminal Law § 453 (NCI4th)— prosecutor's closing argument—punishment for second-degree murder—response to defense counsel's argument**

The trial court in a first-degree murder prosecution did not err by refusing to correct the prosecutor's statement during closing argument, "Don't let anyone cause you to believe that the punishment for Second Degree Murder is life, it isn't" where, at the time of the killing, the presumptive term of imprisonment for second-degree murder was fifteen years although the maximum punishment was life imprisonment, and the prosecutor's argument was in response to defense counsel's statement concerning punishment that defendant contended that this was only a second-degree murder case and "it carries life." Even if it is assumed that the prosecutor's statement was improper, the evidence of defendant's guilt of first-degree murder was so overwhelming that a reasonable possibility does not exist that the outcome would have been different but for the statement.

**Am Jur 2d, Trial §§ 564, 572, 575, 584.**

STATE v. LYNCH .

[343 N.C. 483 (1996)]

**Prejudicial effect of statement of prosecutor as to possibility of pardon or paarole. 16 ALR3d 1137.**

**2. Jury § 260 (NCI4th)— peremptory challenge—racially neutral reasons**

The trial court did not err by finding that the reasons articulated by the State for peremptorily challenging a prospective juror in a first-degree murder trial were racially neutral and did not show any purposeful discrimination where the prosecutor stated that he peremptorily challenged the juror because he lived or worked near the community where the murder occurred and had the same last name as defendant but denied knowing defendant or anything about the facts of this case; he gave hesitant answers indicating a possible unwillingness to deliberate or to reach a verdict thereby causing a hung jury; and he stated that he did not want to sit on the case.

**Am Jur 2d, Jury §§ 7, 131-139, 156.**

**Use of peremptory challenges to exclude ethnic and racial groups, other than black Americans, from criminal jury—post-Batson state cases. 20 ALR5th 398.**

**Supreme Court's views as to use of peremptory challenges to exclude from jury persons belonging to same race as criminal defendant. 90 L. Ed. 2d 1078.**

**3. Homicide § 706 (NCI4th)— failure to instruct on voluntary manslaughter—error cured by verdict**

Defendant was not prejudiced by the trial court's failure to instruct on voluntary manslaughter where the court instructed on first-degree and second-degree murder and the jury returned a verdict of guilty of first-degree murder.

**Am Jur 2d, Trial §§ 1482, 1483.**

**Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Sitton, J., at the 17 October 1994 Criminal Session of Superior Court, Rutherford County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to addi-

STATE v. LYNCH

[343 N.C. 483 (1996)]

tional judgments imposed for assault with a deadly weapon inflicting serious injury and assault with a deadly weapon with intent to kill inflicting serious injury was allowed 20 December 1995. Heard in the Supreme Court 15 May 1996.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Harry H. Harkins, Jr., for defendant-appellant.*

PARKER, Justice.

Defendant John William Lynch was found guilty of the first-degree murder of James Ronald Hall, guilty of assault with a deadly weapon with intent to kill inflicting serious injury as to Nancy Head Green, and guilty of assault with a deadly weapon inflicting serious injury as to Mattie Jean Murray. Following a capital sentencing proceeding, the jury recommended and the trial court imposed a life sentence on the murder conviction. The trial court also imposed consecutive sentences of six and three years on the assault convictions. For the reasons discussed herein, we conclude defendant received a fair trial, free from prejudicial error.

The evidence at trial tended to show that in June 1993, Nancy Green lived in a trailer park with her son, Steve. For several months William and Mattie Murray had also been living with Nancy Green. Green and defendant had known each other for many years and in the past had been romantically involved. Green also had a friendship with James Hall.

Approximately a week or two prior to the shootings, Green told defendant that she did not want to have anything to do with him. On 26 June 1993 defendant went to Green's trailer and saw James Hall sitting in the living room. Defendant said, "Yeah, this is what I figured was going on."

In the late afternoon of 29 June 1993, Steve Green, James Hall, William Murray, and Wayne Coggins were all gathered in Green's trailer playing cards. Mattie Murray was also present, and Nancy Green was asleep in the bedroom. Defendant walked into the trailer and shot Hall once in the throat and two or three times in the chest, killing him. Defendant shot Mattie Murray in the side as she turned to run out of the trailer. Defendant then went to the bedroom where Green was sleeping and hit her two or three times in the head with the butt of the gun. Green ran out of the trailer with defendant chasing

her. Green fell as she ran, and defendant caught up with her. Defendant told Green that he loved her but that she was going to die. Green was able to run from defendant, but she fell again as she ran. Defendant drove his truck over the lower part of Green's body, breaking her pelvic bone. Defendant then drove out of the trailer park.

[1] In his first assignment of error, defendant contends that the trial court erred in refusing "to correct the prosecutor's statement that the punishment for second degree murder is not life imprisonment." The State answers that the prosecutor was merely "responding to the mischaracterization of the law of sentencing by the defense attorney." Our review of the record reveals that the following took place during defendant's closing argument:

> So we say or that we've certainly shown that he was intoxicated and if you find from the evidence that he was intoxicated, you should consider whether this condition affected his ability to formulate the specific intent which is required for a conviction of First Degree Murder. The only different [sic] in First Degree Murder is premeditation and deliberation. We say that he didn't have that and we contend that this is only a Second Degree case. And when I say only that's not saying there's nothing to it because it carries life, it carries life.

During the prosecutor's argument to the jury, the following transpired:

> [PROSECUTOR]: Don't let anyone cause you to believe that the punishment for Second Degree Murder is life, it isn't, and I don't want you to go back there assuming that.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.

Under the version of the Fair Sentencing Act in effect at the time of the killing, the presumptive term of imprisonment for second-degree murder was fifteen years, N.C.G.S. § 15A-1340.4(f)(1) (1988) (repealed effective 1 October 1994), though as a Class C felony second-degree murder was punishable "by imprisonment up to 50 years, or by life imprisonment." N.C.G.S. § 14-1.1(a)(3) (1993) (repealed effective 1 October 1994). Defendant argues that since a defendant found guilty of second-degree murder can be punished by life imprisonment, the prosecutor's statement to the contrary was designed to prejudice the jurors and dissuade them from finding defendant guilty of the lesser charge.

Arguments of counsel rest within the control and discretion of the presiding trial judge. *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992). In hotly contested cases, counsel is granted wide latitude in closing arguments. *State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986). Furthermore, in the absence of a showing of prejudice, an improper prosecutorial comment does not require reversal. *State v. Boyd*, 311 N.C. 408, 319 S.E.2d 189 (1984), *cert. denied*, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985).

The argument at issue was made by the prosecutor in response to an inaccurate, incomplete statement concerning punishment made by defendant's counsel. The prosecutor is entitled to respond to arguments made by defense counsel. *See State v. Perdue*, 320 N.C. 51, 62, 357 S.E.2d 345, 352 (1987). Hence, the trial court did not err in overruling defendant's objection.

Furthermore, even if it be assumed that the prosecutor's statement was improper, the evidence of defendant's guilt of first-degree murder was so overwhelming that a reasonable possibility does not exist that the outcome would have been different but for the statement. N.C.G.S. § 15A-1443(a) (1988). This assignment of error is overruled.

[2] Defendant next argues that the trial court erred by overruling his objection to the State's peremptory challenge of prospective juror Julian Lynch. Defendant contends his constitutional rights, as interpreted by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), were violated by the trial court's action.

When an objection is made to the exercise of a peremptory challenge on the ground that the challenge is racially motivated, the defendant must first "make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race." *Hernandez v. New York*, 500 U.S. 352, 358, 114 L. Ed. 2d 395, 405 (1991). If the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. *Id.* at 358-59, 114 L. Ed. 2d at 405. "Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* at 359, 114 L. Ed. 2d at 405.

In the instant case the record is unclear as to whether the trial judge determined that defendant had made a *prima facie* showing of racial discrimination. Nonetheless, the prosecuting attorney stated

his reasons for exercising the challenge. Hence, under *State v. Robinson*, 330 N.C. 1, 17, 409 S.E.2d 288, 296 (1991), we do not need to address the first prong of the test. The reasons cited by the prosecution for excusing juror Lynch were that he lived or worked near the community where the murder took place and had the same last name as defendant but nevertheless denied knowing defendant or anything about the facts of this case; that he gave hesitant answers indicating a possible unwillingness to deliberate or to reach a verdict thereby causing a hung jury; and that he stated he did not want to sit on the case. Responding to the prosecutor's articulated reasons, defense counsel asserted that there was no reason not to believe juror Lynch and that the reasons given for excusing him were a pretext. Having heard the juror's responses and observed his demeanor and having heard statements by counsel for the State and defendant, the court found that the State had "satisfied its burden to explain and to set forth neutrality as to the reason for excusing this juror and that the neutral explanation does not show any discrimination in the excuse and peremptory challenge by the [S]tate of juror Mr. Lynch."

We find no error in the ruling by the trial court on the peremptory challenge of juror Lynch. The State articulated its reasons for the challenge, and the court found that the reasons articulated by the State were racially neutral and did not show any purposeful discrimination in the excuse of juror Lynch. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406; *see also Purkett v. Elem*, — U.S. —, —, 131 L. Ed. 2d 834, 839-40 (1995) (per curiam). Since the trial court's findings as to race neutrality and purposeful discrimination will depend in large measure on the trial judge's evaluation of credibility, these findings should be given great deference. *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21. We conclude that the trial court's findings were supported by the record and hold that the trial court properly overruled defendant's objection to the State's excusal of this prospective juror. This assignment of error is overruled.

[3] Finally, defendant contends the trial court erred in refusing to submit the lesser-included offense of voluntary manslaughter, even though the jury rejected a verdict of guilty of second-degree murder and found defendant guilty of first-degree murder. Defendant candidly acknowledges this Court's previous holdings to the contrary, *see, e.g., State v. Tidwell*, 323 N.C. 668, 374 S.E.2d 577 (1989), but requests that we reconsider this issue.

In *State v. Tidwell* we held that a trial court does not commit prejudicial error in failing to give a voluntary manslaughter instruction when a jury rejects a verdict of guilty of second-degree murder and instead finds defendant guilty of first-degree murder. *Id.* at 674-75, 374 S.E.2d at 581. In the instant case the trial court instructed the jury on first-degree and second-degree murder. After deliberations the jury returned a verdict of guilty of first-degree murder.

Defendant has presented us with no persuasive reasons to depart from our previous holdings on this issue, and we decline to do so. Therefore, we hold that defendant was not prejudiced by the trial court's refusal to give the requested instruction. This assignment of error is overruled.

NO ERROR.