An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-1192

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Edgecombe County |
|  | Nos. 12 CRS 51319—21, 12 IFS |
|  | 450 |
| MELISSA NATASHA SPELLMAN, |  |
| Defendant. |  |

Appeal by defendant from judgments entered 5 March 2013 by Judge Walter H. Godwin, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 8 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Tammera S. Hill, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Kathleen M. Joyce, for defendant-appellant.*

BRYANT, Judge.

Where the trial court conducted a balancing test pursuant to Rule 403, the trial court did not abuse its discretion by the admission of evidence. Where a prosecutor's closing remarks are

a reiteration of the evidence, such remarks are proper and do not require the trial court to intervene *ex meru moto*.

On 24 September 2012, defendant Melissa Natasha Spellman was indicted by an Edgecombe County Grand Jury on one count each of second-degree murder, aggravated felony serious injury by vehicle, driving while license revoked, reckless driving, and failure to stop at a stop sign. Defendant pled not guilty to all counts, and the charges came on for trial at the 4 March 2013 Criminal Session of Edgecombe County Superior Court.

The State's evidence tended to show the following. On 12 May 2012, eyewitness Daryle Whitfield was driving with his son on Highway 43. Whitfield testified that a motorcyclist was driving in front of his car; the motorcyclist was later identified as Chris Taylor. As Whitfield approached the intersection of Highway 43 and State Road 1003, he noticed "a white sedan coming to that intersection at a high rate of speed" and thought to himself that "they ain't got time to stop." The intersection was clearly marked with stop signs and flashing red stop lights for traffic driving along State Road 1003.

As the white sedan came through the intersection, it hit Taylor, causing the sedan to flip. Whitfield testified that he saw Taylor moving immediately after the accident and told Taylor

that he was going to get help.  Taylor was later pronounced dead at the scene, and the cause of death was attributed to "massive head injury from a motor vehicle collision."  Whitfield stated that when he approached the white sedan which had flipped onto its roof, he saw three people inside.  Whitfield testified that two of the sedan's occupants, defendant and a man, were moving while a third, a female in the back seat, was not and appeared to be dead.

State Highway Patrol Trooper Kearstin Howald testified that as she began to investigate the accident scene, she noticed that the white sedan "reeked of beer" and saw a beer can inside the vehicle.  Trooper Howald stated that when she went to Vidant Edgecombe Hospital to speak with the occupants of the white sedan, she spoke first with defendant.  Trooper Howald testified defendant smelled strongly of alcohol, had red, glassy eyes and slurred speech, and was very talkative.  Defendant, who was then nineteen years old, told Trooper Howald she had been driving the white sedan but it was not her car; she thought she had been in a single-car wreck caused by her losing control on a curve in the road near the intersection; and that she had been drinking that day but was not drunk.  Trooper Howald testified that defendant told her she had consumed a bottle of Corona beer and

a vodka shot earlier that day. A chemical analysis of defendant's blood determined that defendant's blood alcohol content ("BAC") at the time of the accident was approximately 0.40, five times the legal limit.

Defendant identified to Trooper Howald the two other occupants of the white sedan as her friends Brandon Harrell and Mareshah McCray. The accident left McCray in a coma. McCray suffered brain trauma, fractures in her neck, spine, collar bone, and ribs, her ear was severed, and she would require facial reconstruction. Harrell was not seriously injured.

Defendant testified she had been drinking with Harrell and McCray the day of the accident but drove the white sedan because she "felt like, you know, I would be the one to drive." Defendant stated she did not learn of Taylor's death until Trooper Howald told her at the hospital; Trooper Howald testified that when defendant learned of Taylor's death defendant became upset and said "I shouldn't have been drinking."

Before trial on 30 January 2013, the State filed a notice of intent to introduce evidence concerning defendant's prior conviction on 21 October 2010 for driving while impaired ("DWI"). Defendant filed a motion to exclude evidence of her

prior DWI conviction under Rule 404(b), and a motion to exclude evidence of social networking activity. The trial court denied defendant's motion to exclude evidence of her prior DWI conviction at the beginning of trial, and reserved judgment on the motion to exclude evidence of social networking activity until the State sought to introduce such evidence into the trial.

At trial, the court excluded evidence of a photograph taken from defendant's Facebook page, but allowed evidence of defendant's "About Me" statement made on her Facebook page.

On 5 March 2013, a jury convicted defendant of all counts. Defendant was sentenced to consecutive sentences totaling 182 to 243 months on the felony counts and received a consolidated sentence of 45 days and a $100.00 fine for the traffic misdemeanors. Defendant appeals.

_____

Defendant raises two issues on appeal: whether the trial court erred (I) under Rule 403 in admitting evidence of defendant's Facebook statement; and (II) by failing to intervene *ex mero motu* during the State's closing argument.

*I.*

Defendant argues that the trial court erred in not conducting a Rule 403 balancing test prior to admitting evidence of defendant's Facebook statement. We disagree.

Pursuant to Rule 403 of the North Carolina Rules of Evidence, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2013). We review a trial court's Rule 403 ruling for abuse of discretion. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

The State sought to introduce into evidence, pursuant to Rule 404(b), a photograph and a personal statement from defendant's Facebook page. After hearing arguments by both sides concerning the photograph's admissibility pursuant to Rule 404(b), the trial court conducted a Rule 403 balancing test and determined that although the photograph was relevant, it could not be authenticated; therefore, its probative value was outweighed by its prejudicial effect and, thus, should be excluded from evidence.

The State then sought to introduce evidence of defendant's "About Me" Facebook statement during its cross-examination of defendant. Defendant's statement was as follows: "Getting wasted is my lifestyle. If you don't like it, then f*** off. I'm a party animal and a rapper and, oh, yeah, I'm a f***** boss."

In its offer of proof outside the jury's presence, the State argued that defendant's Facebook statement was admissible for the same reasons the State sought to have defendant's Facebook photograph admitted into evidence because this evidence went to the issue of malice. In admitting the statement into evidence, the trial court noted that:

> You got a difference in what she wrote and authenticated. She just sat there during the offer of proof and said it was her facebook page and that is what she wrote on it.
>
> . . .
>
> That's different than the picture that she says someone else [took]. So my ruling is is [sic] that the picture cannot come in as I ruled before, but what she wrote on that limited thing on what he is offering it as proof may be admitted.

In reviewing a Rule 403 balancing test, this Court has held that a specific finding as to probative value versus prejudicial effect is not required provided it is clear from the procedure

used that the trial court conducted a balancing test. *See State v. Washington*, 141 N.C. App. 354, 367, 540 S.E.2d 388, 397—98 (2000) ("Here, when defendant objected, the trial court excused the jury, conducted a *voir dire* examination of [a witness] to determine the substance of her testimony, and then considered arguments of counsel before overruling defendant and permitting the jury to hear the testimony. Although the trial court did not make a specific finding that the probative value of the evidence outweighed its prejudicial effect, the procedure that was followed demonstrated that the trial court conducted the balancing test under Rule 403. We cannot say that the trial court abused its discretion in admitting the evidence. Accordingly, this assignment of error is overruled.").

Here, as in *Washington*, the trial court held a *voir dire* out of the presence of the jury as to the proposed statement and listened to the arguments of counsel, including the State's offer of proof that the statement was evidence of malice. Although the trial court did not make specific findings on the record that it found the probative value was outweighed by any prejudicial effect, it is clear from the record that the trial court considered the substance of the proposed statement of defendant and the arguments of counsel before allowing

defendant's Facebook statement into evidence and that such decision was made pursuant to a Rule 403 balancing test. *See id.* Therefore, the trial court did not abuse its discretion in admitting the evidence. *Id.*

Defendant further contends the trial court erred in admitting her Facebook statement because had this evidence not been admitted, the jury would have reached a different result. Specifically, defendant contends that the admission of her Facebook statement was prejudicial error in that it caused the jury to convict her of second-degree murder rather than the lesser charge of involuntary manslaughter. As we have held the trial court did not err in admitting defendant's Facebook statement, defendant's prejudicial argument is without merit. Nevertheless, assuming *arguendo* the trial court erred, we address defendant's argument alleging prejudicial error.

"The test for prejudicial error is whether there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial." *State v. Scott,* 331 N.C. 39, 46, 413 S.E.2d 787, 791 (1992) (citation omitted).

In pursuing a charge of second-degree murder against defendant, the State needed to show that defendant acted with

malice when she drove while intoxicated. This Court has held that malice can be shown through evidence of defendant's prior convictions for DWI. *See State v. Edwards*, 170 N.C. App. 381, 385, 612 S.E.2d 394, 396 (2005) ("[P]rior driving convictions of a defendant are admissible to show malice . . . in a second-degree murder case[.]" (citation omitted)).

The State's evidence showed: defendant admitted to driving the white sedan that struck and killed Taylor; defendant was noticeably intoxicated after the accident and her BAC was 0.40, five times the legal limit; and defendant was nineteen-years-old at the time of the accident, two years below the legal drinking age. In addition, the State's evidence concerning defendant's prior conviction for DWI showed: defendant was in a serious one-car wreck exactly two years prior to her fatal accident with Taylor; defendant was seventeen-years-old at the time of the accident; chemical analysis showed defendant had a 0.29 BAC at the time of the accident; defendant's license was revoked after the accident, and she failed to undergo substance abuse classes or perform community service to restore her license; and, defendant spent time in jail for failure to perform community service. While defendant's statement beginning with "Getting wasted is my lifestyle . . ." was certainly damaging, her own

actions which showed serious drinking (0.29) at seventeen-years-old which resulted in a serious accident, loss of license, and failure to perform required community service, were more damaging than her words. Therefore, even absent defendant's statement there was sufficient evidence for the jury to find defendant guilty of second-degree murder. Defendant's argument is overruled.

*II.*

Defendant next argues that the trial court erred by failing to intervene *ex mero motu* during the State's closing argument. We disagree.

Prosecutors are allowed wide latitude in the scope of their argument. *State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975). A prosecutor's argument is not improper where it is consistent with the record and does not travel into the fields of conjecture or personal opinion. *State v. Craig*, 308 N.C. 446, 457–58, 302 S.E.2d 740, 747 (1983) (citations omitted). A prosecutor can make closing arguments based on evidence presented as well as reasonable inferences which can be drawn therefrom. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (citations omitted). Only where the prosecutor's argument affects the right of the defendant to a

fair trial will the trial judge be required to intervene where no objection has been made. *State v. Harris*, 308 N.C. 159, 169, 301 S.E.2d 91, 98 (1983). "[F]or an inappropriate prosecutorial comment to justify a new trial, it must be sufficiently grave that it is prejudicial error." *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487—88 (1992) (citation and quotation omitted).

Defendant contends the trial court erred in failing to intervene *ex meru moto* during the State's closing argument because the closing remarks were "grossly improper." As previously discussed in *Issue I*, the trial court allowed the State to present evidence of defendant's "About Me" statement on her Facebook page. The statement, which defendant acknowledged was hers, was read into evidence by defendant in open court. In its closing argument, the State made the following remarks:

> Now, I'll tell you something, ladies and gentlemen, [there are] not many cases that you can look into a person's mind. You know, nine times out of ten when a judge talks about what's on somebody's mind, he tells you that you have to infer that from the person's actions because we can't read minds.
>
> It's rare that we get evidence of what's on somebody's mind. We have it in this case. About [defendant], you know, this was a youthful thing and that culture and all this and it doesn't have any meaning

according to her argument.

Well, getting wasted is my lifestyle. Well, it's interesting that [defendant] wants you to say, well, she didn't mean that. Well, her actions sure indicate she meant it. She got wasted in 2010 to the point of a .29 and she got wasted on that day. So she told the truth here. She was wasted.

And if you don't like it, then, blank off. I'm a party animal and rapper and, oh, yeah, I'm a blanking boss. Her words, not mine. Party animal and I like to get wasted. You don't like it, blank off.

Well, I'll tell you. I'm going to sit down. This is in your hands. You've heard it. You can adopt the mailbox empty or the mailbox full. You heard the evidence. I'm not going to belabor the point. But I do feel compelled to say this to you.

If you find her guilty of anything in this case but second-degree murder, then you will join her by telling this man and this family to blank off.

"A lawyer's function during closing argument is to provide the jury with a summation of the evidence, which in turn serves to sharpen and clarify the issues for resolution by the trier of fact, and should be limited to relevant legal issues." *State v. Jones*, 355 N.C. 117, 127, 558 S.E.2d 97, 103 (2002) (citations and quotation omitted). Thus, during closing argument "[a]n attorney may, however, on the basis of his analysis of the

evidence, argue any position or conclusion with respect to a matter in issue." N.C. Gen. Stat. § 15A-1230(a) (2013).

Here, the State used defendant's own words in making its closing argument to remind the jury that defendant had acted with malice when she drove while intoxicated and killed Taylor and, thus, was guilty of second-degree murder. As such, the State used defendant's Facebook statement to argue a "conclusion with respect to a matter in issue." *Id*. Therefore, defendant's argument that the State prejudiced the jury with improper remarks and the trial court erred by failing to intervene is overruled.

No error.

Judges HUNTER, Robert C., and STEELMAN concur.

Report per Rule 30(e).