STATE OF NORTH CAROLINA v. JAMES FELTON EASON

No. 280A93

(Filed 29 July 1994)

1. Jury § 261 (NCI4th)— peremptory challenge—Jehovah's Witness—death penalty views—no religious discrimination

The prosecutor's peremptory challenge of a Jehovah's Witness in a first-degree murder trial did not constitute religious discrimination in violation of Art. I, § 26 of the N.C. Constitution or the First Amendment of the U.S. Constitution where the juror was stricken because she expressed reservations about the death penalty, and the prosecutor moved to excuse her after learning that she was a Jehovah's Witness only after making further inquiry to discover how her religious beliefs might affect her ability to follow the law. The prosecutor's statement that one reason he excused the juror was that he had been informed "that this religion does not believe in the death penalty" did not show religious discrimination since an attorney cannot be expected to ignore all outside knowledge and experience when exercising peremptory challenges, and this knowledge was used in combination with the juror's own statements to show a high probability that the juror might not be able fairly to consider the death penalty.

Am Jur 2d, Jury §§ 233 et seq.

2. Criminal Law § 76 (NCI4th)— venue change allowed—return to original venue allowed—invited error—denial of subsequent motion to change venue

Where the first trial judge changed the venue of defendant's murder trial from Harnett County to Johnston County upon motion by defendant for a change of venue based on local publicity, defendant was dissatisfied with this change of venue because it changed only the county and not the district, and defendant asked the second trial judge to return the case to Harnett County on the ground that he had only one attorney for his capital trial at the time his original motion for a change of venue was granted, any error by the second trial judge in returning the case to Harnett County was invited by defendant's request that the second trial judge vitiate the action of the first judge, and defendant cannot complain of the second

judge's action. Once the case was returned to Harnett County, a third trial judge did not err by denying defendant's motion for a change of venue where all the seated jurors indicated that they could disregard pretrial publicity and decide the case solely on the basis of the evidence presented at trial, and defendant still had three unused peremptory challenges when the jury was seated.

**Am Jur 2d, Criminal Law § 378.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

3. **Homicide § 489 (NCI4th) — first-degree murder — premeditation and deliberation — inference from lack of provocation — instruction supported by contradictory evidence**

Although the defendant in a first-degree murder trial presented evidence of provocation by testimony that he had been struck in the groin with a pool cue, others in the bar were laughing at him, after he broke a pool cue in anger, the victim demanded money for the broken cue, and a bar employee separated them and tried to calm the situation, the State presented sufficient evidence that defendant was not provoked to support the trial court's instruction that premeditation and deliberation could be inferred from a lack of provocation where its evidence tended to show that no one in the bar, including defendant, believed that the victim had been the one who hit defendant in the groin, the victim had tried to be a peacemaker and defuse the situation, after they had been separated, the victim shook defendant's hand and tried to befriend him, and at the time he was attacked by defendant with a knife, the victim had just taken a phone call.

**Am Jur 2d, Homicide § 501.**

4. **Criminal Law § 373 (NCI4th) — judicial notice — court's statement while ruling on objection — no expression of opinion on evidence**

The trial court's statement, "That's within judicial notice," made when overruling defendant's objection to the prosecutor's jury argument that alcohol is a depressant and that a murder victim was subdued, laid back, not aggressive, and not wanting to fight, could not have caused the jury to infer that the court was taking judicial notice that the victim was laid back

STATE v. EASON

[336 N.C. 730 (1994)]

and not aggressive and, when considered with the court's instruction on provocation, that the prosecution had proven premeditation and deliberation from a lack of provocation. The evidence was sufficient to show premeditation and deliberation from a lack of provocation without the court's statement, and the statement could not have affected the jury's verdict.

**Am Jur 2d, Trial § 284.**

5. **Evidence and Witnesses § 1250 (NCI4th)— in-custody statement—no invocation of right to attorney**

Defendant's in-custody statement was not improperly obtained after defendant invoked his right to an attorney where there was ample evidence to support the trial court's finding that defendant never requested an attorney after he had been given the *Miranda* warnings.

**Am Jur 2d, Evidence §§ 749, 750.**

6. **Evidence and Witnesses § 1260 (NCI4th)— in-custody statement—invocation of right to silence—reinitiation of interrogation by defendant—absence of finding—harmless error**

Any error in the admission of defendant's in-custody statement in a first-degree murder trial without a finding that he reinitiated the questioning following invocation of his right to silence was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt, including testimony by six eyewitnesses, evidence that police officers chased defendant from the crime scene and caught him splattered with blood and with a bloody knife still in his hand, and evidence that defendant made several spontaneous incriminating statements after his arrest.

**Am Jur 2d, Evidence §§ 749, 750.**

7. **Evidence and Witnesses § 2051 (NCI4th)— aggravated assault—enjoyment by defendant—shorthand statement of fact**

Testimony by an aggravated assault victim, who was describing how defendant had attacked him with a knife, that defendant had a grin on his face and "was enjoying what he was doing" was admissible as a shorthand statement of fact since it represented an instantaneous conclusion of the witness based on his perception of defendant's appearance, facial expressions, and mannerisms. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Expert and Opinion Evidence § 29.**

**8. Criminal Law § 1183 (NCI4th) — aggravating factor — prior conviction — lost transcript — addendum to record**

Although a transcript of the prosecution's presentation of evidence of a previous conviction was lost through transcription error, the trial court's finding of defendant's previous conviction as an aggravating factor was shown to have been supported by the evidence where an addendum to the record contained a certified copy of the judgment and commitment from the previous conviction and a sworn affidavit by the prosecutor that this was the same evidence presented to the trial court as proof of that conviction.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Trawick, J., at the 29 January 1992 Criminal Session of Superior Court, Harnett County. Defendant's motion to bypass the Court of Appeals on judgments entered on other felony convictions was allowed by the Supreme Court on 15 July 1993. Heard in the Supreme Court 3 February 1994.

*Michael F. Easley, Attorney General, by Thomas F. Moffitt, Special Deputy Attorney General, for the State.*

*William F.W. Massengale and Marilyn G. Ozer for defendant-appellant.*

WHICHARD, Justice.

In a capital trial, the jury found defendant guilty of the first-degree murder of Kirk Upchurch. He was also found guilty of two counts of assault with a deadly weapon with intent to kill inflicting serious injury. Following the guilt phase of the murder trial, the State offered no additional evidence at sentencing, and the trial court determined that the State's guilt-phase evidence was insufficient to warrant submission of any capital sentencing aggravating circumstances to the jury. It accordingly sentenced defendant to life imprisonment on the murder charge. It sentenced him to twenty years imprisonment on each of the assault charges, the sentences to run consecutively. We find no error.

The State's evidence tended to show that on the evening of 16 July 1990, defendant was drinking beer and shooting pool at

STATE v. EASON

[336 N.C. 730 (1994)]

the Silver Bullet, a lounge located at the Comfort Inn in Dunn, North Carolina. Kirk Upchurch, Raymond Houston, Paige Thomas, Charles Parker and William Medley also were patronizing the Silver Bullet that night. Claudette Roberts was tending bar, and Ricky Hall was assisting her.

During a game of pool, defendant became angry, walked between the pool tables, snapped a pool cue over his knee, and approached the bar with the two halves of the pool cue in his hands. He said he had been getting ready to play when someone hit him hard in the testicles. He said to Thomas, "That son of a bitch just jabbed me in the nuts with a pool stick," pointing to Charles Parker. There was evidence that neither Upchurch, Thomas nor Houston saw the incident. Parker and Medley testified they had no knowledge of it.

At the bar, Upchurch was trying to calm defendant. Defendant remained upset and moved to the other end of the bar. Shortly thereafter, defendant moved to Upchurch's end of the bar and seated himself next to Upchurch. The telephone rang. One of Upchurch's friends asked to speak to Upchurch. She could hear Upchurch's voice as he neared the phone, then a woman screaming, "Make him stop it!" Then the phone went dead.

Houston was standing at the bar when he saw defendant scuffling with Upchurch. Houston tried to part them. Claudette Roberts went to Upchurch, who by this time was behind the bar clutching his throat, which had been sliced and was completely open. Upchurch died as a result of these wounds. Roberts then saw defendant standing over Houston, cutting his throat. Houston testified that he had taken a step toward Upchurch and defendant when defendant grabbed him, spun him around backwards, picked him up by the throat, and threw him to the floor. Paige Thomas took Houston to the hospital.

Parker testified that while defendant was attacking Upchurch and Houston, he was putting his pool cue back in the rack, oblivious to what was happening at the bar. Defendant then attacked him from behind, cutting his mouth and part of his face. Roberts attempted to get help but was thwarted because the phone had been broken during the attack on Upchurch. After verbal exchanges between defendant and Roberts, in which defendant said he would kill her also, defendant left.

Officer James Cannady of the Dunn Police Department was dispatched to the Comfort Inn and arrived around 1:00 a.m. As Cannady walked toward the motel entrance, he heard Ricky Hall say that defendant was the one who "did it" and "get him." Defendant ran behind a house and hid. He soon was cornered by four police officers. When told he would be shot if he did not drop the knife, defendant closed the blade of the knife and dropped it. Once he dropped the knife, however, he refused to give up, and it took all four officers to wrestle him to the ground. When apprehended, defendant had blood on his clothing and a bloody knife in his hands.

During the drive to the police station, defendant spontaneously stated that he thought he had killed all three of the victims and deserved whatever he was going to get. He also stated, "I should have killed them. I should have killed them when I had the chance." Later at the station, defendant stated, "If [I] had the time to go back over it again, I would kill you SOBs too," referring to the officers.

Captain Sills testified that as defendant was being taken to the processing room, he heard defendant spontaneously say "that he knew he had killed the mother------, and he hoped the mother------ down there didn't have AIDS and that he knowed one was dead because he stuck him real good." When defendant arrived at the station, he received the *Miranda* warnings, but refused to make a statement. About an hour later, when the investigating officer arrived, defendant again received *Miranda* warnings. At this time, defendant made a tape-recorded statement which was essentially a confession.

Defendant offered no evidence.

## PRE-TRIAL ISSUES

[1] Defendant first assigns error to the trial court's denial of his motion to prohibit the prosecutor from using a peremptory challenge in a discriminatory manner. He asserts that in striking a Jehovah's Witness from the jury, the State violated the First and Fourteenth Amendments to the United States Constitution and Article I, Section 26 of the North Carolina Constitution.

Article I, Section 26 of the North Carolina Constitution states: "No person shall be excluded from jury service on account of sex, race, color, religion, or national origin." Defendant claims that in

striking a Jehovah's Witness from the jury with a peremptory challenge, the State violated the prohibition on religious discrimination. We disagree.

In enacting Article I, Section 26, the citizens of North Carolina rejected the corruption of their jury system by any form of irrational prejudice. *State v. Moore*, 329 N.C. 245, 247, 404 S.E.2d 845, 847 (1991); *State v. Cofield*, 320 N.C. 297, 302-04, 357 S.E.2d 622, 625-27 (1987). The elimination of discrimination was essential to protect not only the rights of the defendant but also the integrity of the judicial system. *Moore*, 329 N.C. at 247-48, 404 S.E.2d at 847-48. Discrimination in selecting juries so strongly taints the judicial system that any proceeding in which it appears is fatally flawed. *Cofield*, 320 N.C. at 304, 357 S.E.2d at 627. For this reason, the fact that the defendant's race or religion differs from the excluded person's is irrelevant. *See Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991) (white defendant may challenge discriminatory excusal of black jurors); *Moore*, 329 N.C. at 246-48, 404 S.E.2d at 847-48.

The potential juror here was not stricken solely because she was a Jehovah's Witness, however. Rather, the prospective juror, because of her strong personal and religious convictions, expressed reservations about the death penalty and was stricken because of these reservations. When a potential juror has convictions that would prevent him or her from voting to impose the death penalty, without regard to the evidence presented at trial, that juror is properly excused for cause. *Witherspoon v. Illinois*, 391 U.S. 510, 523 n.21, 20 L. Ed. 2d 776, 785 n.21 (1968); *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). When a juror's reservations about the death penalty are not so grave as to merit an excusal for cause under *Witherspoon*, the juror frequently is excused with a peremptory challenge. *State v. Allen*, 323 N.C. 208, 221-22, 372 S.E.2d 855, 863 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand, sentence reinstated*, 331 N.C. 746, 417 S.E.2d 227 (1992), *cert. denied*, --- U.S. ---, 122 L. Ed. 2d 775 (1993). In *Allen*, we held that this violated neither the North Carolina nor the United States Constitution. *Id.* at 222, 372 S.E.2d at 863. We have noted that the exercise of peremptory challenges is frequently " 'more art than science' " and is based on "legitimate 'hunches' and past experience." *State v. Thomas*, 329 N.C. 423, 432, 407 S.E.2d 141, 147 (1991) (quoting *State v.*

*Porter*, 326 N.C. 489, 497, 391 S.E.2d 144, 150 (1990)). Because so much of the peremptory challenge determination depends on feel and intuition, great deference must be given to the trial judge who actually saw and heard the potential juror. *Wainwright v. Witt*, 469 U.S. 412, 424-26, 83 L. Ed. 2d 841, 851-53 (1985); *Davis*, 325 N.C. at 622, 386 S.E.2d at 425.

Here, potential juror Shirley McKoy expressed reservations about the death penalty. After the trial judge asked the prospective jurors if any of them had feelings about capital punishment that might substantially impair their ability to consider it fairly, the following exchange occurred:

Q: Ms. McKoy, you haven't answered, but I see your head shaking.

A: I'm not sure. I have mixed feelings.

Q: You have mixed feelings?

A: Yes.

Q: Do you have—Are your mixed feelings, Ms. McKoy, about whether or not we should have—about whether or not you could abide by the Court's instructions and the evidence that comes from the witness stand and base your decision on the Court's instructions and the evidence that comes from the witness stand regardless of your personal feelings? Can you put your personal feelings aside and base your decision—

A: Yes.

Q: You could do that?

A: [Nods affirmatively].

The prosecutor later renewed this discussion, attempting to clarify McKoy's feelings about the death penalty:

Q: Earlier this afternoon, Ms. McKoy, if I recall correctly, you said you had some reservations about the death penalty; is that correct?

A: [Nods affirmatively].

Q: You have some mixed feelings. Can you explain more of those feelings as best you can?

A: Well, I think it's under the circumstances which the crime was committed, what was involved, the person's background and—that committed the crime.

Q: Are your reservations about the death penalty grounded upon or based upon your religious beliefs and moral convictions?

A: A little of both.

Q: In light of your religious beliefs and moral convictions, Ms. McKoy, do you think that if the defendant in this case is first convicted of first degree murder, do you think that you yourself could fairly consider both possible things, not only life imprisonment, but the death penalty and make your decision based upon the law and the evidence?

A: I think the law and evidence, yeah.

Based on these exchanges, the prosecutor elected to exercise a peremptory challenge to excuse McKoy. At that time, he wrote three race-neutral reasons on a piece of paper and submitted them to the court. The first two were:

1) This juror was very equivocal in explaining her feelings about the death penalty, admitting at least twice that she had very 'mixed feelings' about the death penalty;

2) This juror is a Jehovah's Witness. The prosecutor has been informed, although he does not know for certain, that this religious denomination does not believe in the death penalty. If so, there is a danger that this juror's religious beliefs would interfere with her ability to deliberate as to punishment.

The third reason is irrelevant to consideration of this issue.

Defendant argues that the second reason was discriminatory because it stereotypes Jehovah's Witnesses. We disagree. What this statement does is briefly state the prosecutor's knowledge of a specific tenet of that religious faith. An attorney cannot be expected to ignore all outside knowledge and experience when exercising peremptory challenges. *See Thomas*, 329 N.C. at 432, 407 S.E.2d at 147-48. This knowledge was used in combination with the juror's own statements to show a high probability that the juror might not be able fairly to consider the death penalty.

The prosecutor did not learn that McKoy was a Jehovah's Witness, and move to excuse her, without further inquiry to discover

STATE v. EASON

[336 N.C. 730 (1994)]

how her religious beliefs might affect her ability to follow the law.[1] Instead, the judge and the prosecutor attempted to have McKoy clarify her feelings about the death penalty. We have acknowledged that jurors frequently are unable to articulate how their beliefs may influence their deliberations. *Davis*, 325 N.C. at 622-24, 386 S.E.2d at 425-26. Because prospective jurors convey from the jury box far more than can be reflected in a cold transcript, we generally defer to the trial judge who had the benefit of being present during the courtroom exchanges. *Id.* The judge here found the prospective juror's reservations about the death penalty sufficient to permit a peremptory challenge, and we find no basis in the record for overturning this conclusion.

The State's position is strengthened by the fact that another prospective juror stated that he attended a Jehovah's Witness church. In contrast to McKoy, he stated that he had no reservations which might impair his serving on the jury, and he was chosen to sit. This provides further support for the conclusion that McKoy was removed from the jury because of her reservations about the death penalty, not because of her religious affiliation.

For these reasons, we hold that defendant has failed to prove religious discrimination under Article I, Section 26 of the North Carolina Constitution. The reasons given apply with equal force to deny validity to defendant's arguments under the federal Constitution. *See Thomas*, 329 N.C. at 432-33, 407 S.E.2d at 148 (same deference to trial court's ruling under both constitutions); *Allen*, 323 N.C. at 222, 372 S.E.2d at 863 ("not error under the Constitution of the United States for the prosecution to use its peremptory challenges to excuse veniremen who had qualms about the death penalty but were not excludable pursuant to *Witherspoon*"). This assignment of error is overruled.

[2] Defendant next argues he was denied a fair trial because of improper venue decisions. Defendant originally asked for a change

---

1. *Cf. State v. Davis*, 504 N.W.2d 767 (Minn. 1993), *cert. denied*, --- U.S. ---, 128 L. Ed. 2d 679 (1994). In that case, the prosecutor learned that a potential juror was a Jehovah's Witness and moved to strike without conducting a more specific inquiry into the juror's beliefs. Further, the prosecutor stated that because of her past experience with Jehovah's Witnesses, she would never fail to strike one if she had a peremptory left. *Id.* at 768. The Minnesota Supreme Court held that this did not violate a statutory provision similar to Article I, Section 26 of the North Carolina Constitution.

of venue to a new district because the victim was the son of a well-known court reporter in the district, and his case had generated significant local publicity in Harnett County. The first trial judge agreed regarding the local publicity and changed the venue to Johnston County, a different county but within the same judicial district. At the time this motion was granted, however, the defendant had only one attorney for his capital trial, a violation of N.C.G.S. § 7A-450(b1). The trial judge assigned to Johnston County therefore returned the trial to Harnett County. After the case was returned to Harnett County, a third judge denied a motion to change venue. Defendant contends that the net result of these decisions was to deny him a fair trial. We disagree.

Defendant correctly notes that generally one superior court judge cannot rectify what may seem to be legal errors by another in the same case. *State v. Duvall*, 304 N.C. 557, 562, 284 S.E.2d 495, 498 (1981). If this were allowed, the review function of appellate courts would be usurped and trials would become chaotic, as litigants searched for judges willing to grant them more favorable rulings. *Id.* Thus, the general rule is that altering a prior ruling is acceptable only after a showing of a substantial change in circumstances which warrants a different disposition. *Id.*

Here, however, any violation of this general rule occurred at defendant's request. Before any changes in venue had occurred, one of defendant's attorneys withdrew from the case. At that time, motions to change the venue and to continue the proceedings until a second counsel could be appointed were pending. The next day, and before a new assistant counsel could be appointed, the original trial judge denied the motion to continue the proceedings and granted the motion to change the venue from Harnett to Johnston County. When the case came to Johnston County, defendant explained to the trial judge there that the original motion had been granted while the defendant had only one attorney, a violation of N.C.G.S. § 7A-450(b1) as interpreted and applied in *State v. Hucks*, 323 N.C. 574, 374 S.E.2d 240 (1988). Then the following exchange occurred:

THE COURT: So, what you're really saying is that the motion for change of venue should not have been heard.

[DEFENSE ATTORNEY]: Yes, sir. That is—

THE COURT: So, what you're really saying is that venue of this case is properly in Harnett County.

[DEFENSE ATTORNEY]: Yes, sir.

THE COURT: All right.

[DEFENSE ATTORNEY]: That's what I'm saying. I think that's correct, and then we'd like to move it out of Harnett County, out of the district entirely. And my concern is, I've gone ahead and filed a motion to change venue out of Johnston, and I think that that is going to become a more difficult task in light of what I consider to be a ruling that should not have occurred on March 19, 1991. So, in any event, Your Honor, I think that it's clear that when Judge Barefoot entered his order on March 19, 1991 [moving the case from Harnett to Johnston County], Mr. Eason did not have two attorneys he was entitled to as a matter of the statute and according to the Supreme Court holding in Hucks.

In view of the foregoing, we hold that if it was error for the trial judge in Johnston County to return the case to Harnett County, defendant invited the error. When a party invites a course of action, he is estopped from later arguing that it was error. N.C.G.S. § 15A-1443(c) (1988); Brittain v. Blankenship, 244 N.C. 518, 521, 94 S.E.2d 489, 491 (1956). Here, defendant was dissatisfied with the original change of venue because it changed only the county, not the district, and he asked the second trial judge to return the case to the original county so he could try again for a venue out of the district. By asking for a return to the original venue, defendant invited the second trial judge to vitiate the action of the first one, and he cannot complain of this action now.

Defendant further contends that once the case was back in Harnett County, it was error for the trial judge there to deny the motion to change venue, especially because the trial judge who heard the original motion had found cause to change the venue. We disagree.

The decision as to whether to change venue is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Madric, 328 N.C. 223, 226-27, 400 S.E.2d 31, 33-34 (1991). To show prejudice by a failure to change venue, a defendant must have used all his peremptories and have accepted a juror prejudiced by pretrial publicity. State v. Gardner, 311 N.C. 489, 498, 319 S.E.2d 591, 598 (1984), cert. denied, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). Although there was local media

coverage of the murder, the existence of pretrial publicity, standing alone, does not establish a reasonable likelihood that a fair trial cannot be had. *State v. Soyars*, 332 N.C. 47, 53, 418 S.E.2d 480, 484 (1992).

Defendant has the burden of showing it was reasonably likely that the jurors would base their decision on the media coverage, not on the information presented at trial. *Id.* Here, all the seated jurors indicated they could decide the case based solely on the evidence presented at trial. We have stated previously that the jurors' statements as to whether they could limit their deliberations to the evidence presented at trial is the best evidence that pretrial publicity was not prejudicial or inflammatory. *Id.* at 54, 418 S.E.2d at 484; *State v. Richardson*, 308 N.C. 470, 480, 302 S.E.2d 799, 805 (1983). The court also reminded the jury several times during the trial that it was not to read or listen to any stories about the case during the trial.

Further, when the jury was seated defendant still had three unused peremptory challenges. "To meet his burden of proof, defendant must show that the jurors had prior knowledge of the case, that he exhausted his peremptory challenges, and that an objectionable juror sat on the jury." *State v. Mash*, 328 N.C. 61, 64, 399 S.E.2d 307, 310 (1991). Because defendant has failed to meet his burden, we reject this argument.

## GUILT PHASE ISSUES

[3] Defendant next contends the trial court erred when it instructed that premeditation and deliberation could be inferred from a lack of provocation and in taking judicial notice of one of the prosecutor's comments during closing arguments. He argues that the cumulative effect of these actions was to mislead the jury into thinking the court believed the prosecution had proven the element of premeditation and deliberation.

It is proper to charge that premeditation and deliberation can be inferred from a lack of provocation when the charge is supported by competent evidence. *State v. Thomas*, 332 N.C. 544, 563, 423 S.E.2d 75, 86 (1992). Even though the evidence may be contradictory, such an instruction is proper if there is sufficient evidence from which a jury could reasonably conclude that the defendant was not provoked. *State v. Handy*, 331 N.C. 515, 524-25, 419 S.E.2d 545, 549-50 (1992).

STATE v. EASON

[336 N.C. 730 (1994)]

Here, defendant essentially argues that the evidence of provocation was so strong that lack of provocation should have been removed from the case as a matter of law. Defendant had been hit in the groin by a pool cue and testified that others in the bar had been laughing at and belittling him. After defendant had broken a pool cue in anger, witnesses testified that the victim had demanded money for the broken pool cue, and that a bar employee separated them and tried to calm the situation.

The State presented evidence, however, to support the conclusion that defendant was not provoked. No one in the bar, including defendant, believed the victim had been the one who hit defendant in the groin. Several witnesses testified that the victim had tried to be a peacemaker and defuse the situation. For example, after defendant had been hit in the groin with the pool cue, the victim told him that while he did not see it, it must have been accidental and that defendant should calm down. Later, after they had been separated, he went over to defendant, shook his hand, and tried to befriend defendant. Additionally, at the time he was attacked, the victim had just taken a phone call.

Thus, although the evidence was contradictory, a jury could reasonably have concluded that the victim did not provoke the attack. Therefore, it was proper to include the instruction that premeditation and deliberation could be inferred from a lack of provocation.

[4] Defendant also contends the trial court impermissibly took judicial notice of one of the prosecutor's statements during closing arguments. He argues that the instruction on provocation and the following exchange caused the jury to believe the court was accepting the prosecution's arguments:

[PROSECUTOR]: You might wonder about the effect of alcohol and cocaine with Kirk Upchurch [the victim]. First of all, alcohol is a depressant. It seems like that's what he had mostly in his system. It's a depressant. He was subdued. He was laid back, not aggressive, not wanting to fight.

[DEFENSE ATTORNEY]: I object. There has been nothing in testimony to that, Judge.

THE COURT: Sustained—overruled. That's within judicial notice, overruled.

STATE v. EASON

[336 N.C. 730 (1994)]

Defendant recognizes that the court may have merely taken notice of the fact that alcohol is a depressant. He contends, however, that the jury may have inferred from this exchange that the court was taking judicial notice of the fact that the victim was laid back and subdued and that the court therefore believed the prosecution had proven this point.

Because defendant failed to object or request a clarification at trial, he must show plain error—i.e., not only that there was error, but also that without the error the jury probably would have reached a different verdict. Thomas, 332 N.C. at 563, 423 S.E.2d at 86. Defendant essentially contends that absent the instruction on provocation and the judge's responses in the above exchange, the jury would have returned a verdict finding him guilty of second-degree murder or voluntary manslaughter.

The exchange quoted above is somewhat ambiguous, but we cannot conclude that it so affected the jury that without it the jury would have returned a different verdict. Witnesses testified that the victim had not provoked the attack and had attempted to befriend and calm defendant. Witnesses also testified that ten to fifteen minutes passed between when defendant and the victim were separated and when the attack occurred. Finally, at the moment of the attack, the victim had just answered the phone. We therefore reject defendant's contention that the evidence would have been insufficient to show premeditation and deliberation from a lack of provocation without the exchange quoted above, or that the exchange probably affected the verdict.

[5] Defendant's fourth contention is that the trial court erred by admitting into evidence a taped statement defendant made to the police. He argues that this statement was obtained after he had invoked his right to an attorney and his right to remain silent and should have been excluded as a violation of Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). We disagree.

This Court and the United States Supreme Court have held that once a defendant requests an attorney, the police may no longer initiate questioning. Edwards v. Arizona, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386 (1981); State v. Lang, 309 N.C. 512, 521, 308 S.E.2d 317, 321 (1983); see also State v. Pope, 333 N.C. 106, 112, 423 S.E.2d 740, 743-44 (1992) (citing United States Supreme Court decisions defining rule). Defendant relies on these cases to

**STATE v. EASON**

[336 N.C. 730 (1994)]

argue that the police impermissibly reinitiated the interrogation after he had requested an attorney.

The trial court found, however, that defendant never requested that an attorney be present during questioning. During the *voir dire* hearing on the admissibility of defendant's statements, the State presented testimony of the arresting and interrogating officers, who stated that defendant never requested an attorney. Defendant testified that he had requested an attorney. After listening to the testimony, the trial court made multiple findings of fact, including a finding that defendant never requested an attorney. A trial court's findings of fact following a hearing on the admissibility of a defendant's statements are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. *State v. Torres*, 330 N.C. 517, 523, 412 S.E.2d 20, 23 (1992); *State v. Massey*, 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986). As there was ample evidence to support the trial court's finding that defendant never requested an attorney, we cannot disturb it.

[6] Defendant further contends that his statement was obtained in violation of his right to remain silent. In *Mosely v. Michigan*, 423 U.S. 96, 46 L. Ed. 2d 313 (1975), the United States Supreme Court held that once a defendant invokes his right to remain silent, it must be scrupulously honored. *Id.* at 104, 46 L. Ed. 2d at 321. When defendant was given the *Miranda* warnings shortly after arriving at the police station, he refused to make a statement. When the interrogating officer arrived at the police station about an hour later, defendant told him he did not want to be a problem. The officer repeated the *Miranda* warnings to defendant, who proceeded to sign the waiver form and give a statement.

Defendant contends this statement was admitted erroneously because the trial court did not find that defendant reinitiated the interrogation. Only the defendant can reinitiate the interrogation once a request for an attorney has been made. *Lang*, 309 N.C. at 520-21, 308 S.E.2d at 321 (citing *Edwards v. Arizona*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386). Defendant asks us to adopt the holding of *State v. Bragg*, 67 N.C. App. 759, 760-61, 314 S.E.2d 1, 2 (1984), which, by equating the right to counsel and the right to remain silent, held that once a defendant invokes his right to remain silent, only he can reinitiate the interrogation. Here, it is unclear who initiated the interrogation after defendant had invoked his right to remain silent, and the trial court did not make

a specific finding on this issue. Because we have held it to be error for a trial court to fail to make a finding regarding who resumed the questioning once a request for an attorney has been made, *Lang*, 309 N.C. at 520-21, 308 S.E.2d at 321, defendant contends, by analogy, that his confession after invoking his right to silence was admitted erroneously and a new trial should be granted.

Assuming, *arguendo*, that the statement should not have been admitted without a finding as to who reinitiated the discussion, the evidence of defendant's guilt was overwhelming. Six eyewitnesses, including two assault victims who survived, saw defendant attack and kill Kirk Upchurch by slashing his throat with a knife. These witnesses also saw defendant attack Parker and Houston, also by slashing their throats. Police officers began chasing defendant as he fled the scene and caught him, splattered with blood and with the bloody knife still in his hand. After his arrest, defendant made several · spontaneous, incriminating statements, the admission of which he does not contest. In light of this overwhelming evidence, any error in admitting defendant's statement, without a finding that he reinitiated the questioning following invocation of his right to silence, was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988).

[7] Defendant's fifth contention is that the trial court erred in allowing a statement from a witness about what defendant was thinking. We disagree. The comment objected to occurred while the prosecutor was questioning one of the victims, who was describing how defendant had attacked him.

Q. How many times do you remember being cut that evening?

A. I just sort of went blank. I just kind of went blank and I was trying to—I don't know what I was trying to do, you know. I just kept seeing him in front of me, and he had this grin on his face. He was enjoying what he was doing.

[DEFENSE ATTORNEY]: Object, Your Honor.

THE COURT: Overruled.

A. Excuse me.

Q. Go ahead.

A. Did I do something wrong?

Q. Go ahead.

STATE v. EASON

[336 N.C. 730 (1994)]

A. He had a grin on his face. You know, the man was enjoying what he was doing.

Defendant did not object to the statement when it was made the second time.

Generally, a witness is not allowed to testify as to what another person is thinking because this is speculative and amounts to impermissible opinion evidence. However, Rule 701 allows a lay witness to testify in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701 (1992); see State v. Williams, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987). This exception includes what are frequently called "shorthand statements of facts." Id. "[A] witness may state the 'instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time.'" Id. (quoting State v. Spaulding, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), sentence vacated, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976) (quoting State v. Skeen, 182 N.C. 844, 845, 109 S.E. 71, 72 (1921))). The comment "he was enjoying what he was doing" represents an instantaneous conclusion of the witness based on his perception of defendant's appearance, facial expressions, mannerisms, etc. As such, it is a "shorthand statement of fact," and defendant's objection was properly overruled. Further, even if there was error, defendant waived his objection when he failed to renew it when the statement was repeated.

SENTENCING PHASE ISSUE

[8] Defendant's final contention is that the trial court impermissibly used a previous conviction as an aggravating factor in sentencing on the assault convictions. He argues that there is inadequate evidence to support the previous conviction because the tape recording of the prosecution presenting its argument for aggravating factors was erased by an error in the transcription process.

The State has the burden of proving any aggravating factors. State v. Parker, 315 N.C. 249, 255, 337 S.E.2d 497, 500 (1985). Many different forms of proof are acceptable, however. See State v. Thompson, 309 N.C. 421, 424-25, 307 S.E.2d 156, 159 (1983). Because the transcript of the prosecution's argument was lost through

transcription error, it is unclear what evidence was presented at the sentencing hearing to prove the previous conviction. An addendum to the record contains a certified copy of the judgment and commitment from the previous conviction, however. This document clearly establishes the existence of the previous conviction. Further, the addendum to the record contains a sworn affidavit from the prosecutor that this was the same evidence presented to defendant and the trial court as proof of the prior conviction. Defendant's argument is therefore without merit.

NO ERROR.