BERGER, Judge.
 

 On January 7, 2016, a Caldwell County jury convicted Allen Duane Parlier ("Defendant") of statutory rape and indecent liberties with a child. Defendant appeals, alleging these convictions should be reversed because his confession was obtained in violation of
 
 Miranda
 
 , and that he should have been allowed to interrogate the victim regarding her general sexual history contrary to the Rape Shield Law. We disagree.
 

 Factual Background
 

 Caldwell County Detective Shelley Hartley was assigned to investigate a report from July 23, 2013, concerning an incident between Defendant and the parents of a 15-year-old girl, Cindy.
 
 [1]
 
 When Cindy's parents
 
 *342
 
 discovered that the 41-year-old Defendant had been having sex with their daughter, Defendant fled to avoid a physical confrontation. Detective Hartley was unable to locate Defendant during her investigation, and advised Defendant's mother that she would like to speak with him.
 

 On February 10, 2014, nearly seven months later, Defendant called Detective Hartley and left a voicemail message for her. Detective Hartley made contact with Defendant that same day, and she requested that he come speak with her at the Caldwell County Sheriff's Department. No warrant or other criminal process had been issued for Defendant, and no one from the Sheriff's Department transported him to meet Detective Hartley. Defendant traveled to the Sheriff's Department voluntarily.
 

 Detective Hartley met Defendant in the Sheriff's Department lobby, identified herself, and advised that she was a detective. She was not dressed in a patrol uniform, but in plain clothes, and her weapon, although on her person, was not visible.
 

 Detective Hartley requested that Defendant come talk with her, and Defendant followed her to an interview room. The two proceeded down a long hallway with at least two secure doors which prevented public access into the investigations division. The hallway doors were not locked and did not prevent egress from the Sheriff's Department. Defendant was not placed under arrest at that time, and he was never told that he was not free to leave. The door to the interview room was closed because of noise in the hallway, but it was not locked. Detective Hartley did not advise Defendant of his
 
 Miranda
 
 rights.
 

 Detective Hartley and Defendant spoke for approximately 25 minutes in the interview room. During this time, Defendant never requested food or water, never requested an attorney, and never indicated that he was uncomfortable or needed a break. Further, Defendant never requested to leave the interview room. Prior to entering the interview room, Defendant only stated that he had been sick, but there was no evidence of illness or discomfort during the interview.
 

 Defendant's interview with Detective Hartley was videotaped and later transcribed for use at trial. Defendant admitted that he and Cindy had sexual intercourse on six different occasions. Detective Hartley arrested Defendant at the conclusion of the interview.
 

 Cindy testified at trial that the two began exchanging text messages of a sexual nature in June 2013. Initially, they met and kissed, but soon thereafter, Defendant went to Cindy's home and performed oral sex on her and then gave her marijuana. The following day, Cindy went to Defendant's mother's trailer home where they had sexual intercourse in his mother's room. Defendant's sexual relationship with the 15-year-old lasted until late July 2013, when Cindy's parents discovered the relationship and reported it to law enforcement.
 

 During the investigation, Cindy told Detective Hartley that she could not remember how many times she and Defendant had sex, but it was at least one time per day, each weekday, from the end of June until July 22, 2013. During this time, Defendant provided Cindy with gifts and drugs. Cindy testified that she never wanted to tell anyone about the relationship because she "didn't want to disappoint him."
 

 Cindy testified that she informed Defendant that she was 15 years old before they engaged in sexual activity. Defendant told Cindy that "he was risking a lot to do it with [her] and that, if he ever was caught, he would go to jail."
 

 Procedural Background
 

 On May 6, 2014, Defendant was indicted by a grand jury in Caldwell County for the Class B1 felony of statutory rape of a 15-year-old child in violation of
 
 N.C. Gen. Stat. § 14-27
 
 .7A (2013), and the Class F felony of taking indecent liberties with a child in violation of
 
 N.C. Gen. Stat. § 14-202.1
 
 (2013).
 

 Prior to trial, the State filed a motion
 
 in limine
 
 to preclude inquiry into the sexual activity of the complainant, other than the acts at issue in the indictment, pursuant to
 
 *343
 
 N.C. Gen. Stat. § 8C-1, Rule 412. The trial court held this motion in abeyance prior to trial, but granted this motion during trial.
 

 Defendant made an oral motion at the beginning of trial to suppress the videotaped interview of Defendant by Detective Hartley. This motion was made on the grounds that the interview was custodial interrogation and Defendant had not been given the warnings mandated by
 
 Miranda
 
 . Defendant did not file an affidavit with the trial court in support of his motion. The trial court heard testimony from Detective Hartley, and arguments from counsel for both the State and Defendant. At the conclusion of this hearing, the trial court made oral findings of fact, and denied the motion to suppress. At trial, Defendant objected to the admission of a transcript of the videotaped interview, but he did not object to the admission of the videotaped interview itself.
 

 On January 7, 2016, the jury found Defendant guilty of both charged offenses. Defendant was sentenced in the presumptive range to a term of 270 to 384 months imprisonment. Defendant timely filed notice of appeal.
 

 Analysis
 

 A.
 
 Non-Custodial Interrogation
 

 Defendant first contends that his February 10, 2014 videotaped confession was inadmissible at trial because it was elicited during a custodial interrogation and he was not given
 
 Miranda
 
 warnings prior to making his statement to Detective Hartley. For these reasons, Defendant argues that the trial court erred in denying his motion to suppress this evidence and allowing its admission during trial. We disagree.
 

 In reviewing the trial court's denial of a motion to suppress, "the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence....' "
 
 State v. Barden
 
 ,
 
 356 N.C. 316
 
 , 332,
 
 572 S.E.2d 108
 
 , 120-21 (2002) (quoting
 
 State v. Eason
 
 ,
 
 336 N.C. 730
 
 , 745,
 
 445 S.E.2d 917
 
 , 926 (1994) ). However, "the trial court's determination of whether an interrogation is conducted while a person is in custody involves reaching a conclusion of law, which is fully reviewable on appeal."
 
 State v. Buchanan
 
 ,
 
 353 N.C. 332
 
 , 336,
 
 543 S.E.2d 823
 
 , 826 (2001) (citation omitted). "The trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found."
 

 Id.
 

 (citations and quotation marks omitted).
 

 We must first note that Defendant failed to object to the admission of the videotaped interview into evidence at trial. "[O]ur Supreme Court has held that a trial court's evidentiary ruling on a pretrial motion to suppress is
 
 not
 
 sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial."
 
 State v. Hargett
 
 , ---N.C.App. ----, ----,
 
 772 S.E.2d 115
 
 , 120 (2015) (citations and quotation marks omitted) (emphasis in original). "Unpreserved error in criminal cases ... is reviewed only for plain error."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 512,
 
 723 S.E.2d 326
 
 , 330 (2012) (citing N.C. R. App. P. 10(a)(4) ;
 
 State v. Black
 
 ,
 
 308 N.C. 736
 
 , 739-41,
 
 303 S.E.2d 804
 
 , 805-07 (1983) ). Plain error is to be "applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a
 
 fundamental
 
 error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused."
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (citation, quotation marks, and brackets omitted) (emphasis in original). Defendant bears this heavier burden of showing that the error rises to the level of plain error.
 
 Lawrence
 
 ,
 
 365 N.C. at 516
 
 ,
 
 723 S.E.2d at 333
 
 .
 

 In now turning to the alleged error, we begin with the Fifth Amendment to the United States Constitution, which provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. In
 
 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966), "the United States Supreme Court determined that the prohibition against self-incrimination requires that prior to a custodial interrogation, the alleged defendant must be advised that he has the right to remain silent and the right to the presence of an attorney."
 

 *344
 

 State v. Warren
 
 ,
 
 348 N.C. 80
 
 , 97,
 
 499 S.E.2d 431
 
 , 440 (1998) (citing
 
 Miranda
 
 ,
 
 384 U.S. at 479
 
 ,
 
 86 S.Ct. 1602
 
 ). However, "[t]he rule in
 
 Miranda
 
 applies only when a defendant is subjected to custodial interrogation."
 
 State v. Hipps
 
 ,
 
 348 N.C. 377
 
 , 396,
 
 501 S.E.2d 625
 
 , 637 (1998) (citation omitted).
 

 In determining whether a suspect is in custody, an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. This is an objective test, based upon a reasonable person standard, and is to be applied on a case-by-case basis considering all the facts and circumstances.
 

 State v. Rooks
 
 ,
 
 196 N.C.App. 147
 
 , 150,
 
 674 S.E.2d 738
 
 , 740-41 (2009) (citations, quotation marks, and brackets omitted).
 

 Any interview of a suspect by a police officer has been recognized by the United States Supreme Court to have coercive aspects to it.
 
 Oregon v. Mathiason
 
 ,
 
 429 U.S. 492
 
 , 495,
 
 97 S.Ct. 711
 
 ,
 
 50 L.Ed.2d 714
 
 (1977). However, the United States Supreme Court has also recognized that
 
 Miranda
 
 warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect."
 

 Id.
 

 at 495
 
 ,
 
 97 S.Ct. 711
 
 . Our inquiry on appellate review is whether there were indicia of formal arrest such that the questioning becomes custodial interrogation.
 
 Buchanan
 
 ,
 
 353 N.C. at 339-40
 
 ,
 
 543 S.E.2d at 827-28
 
 .
 

 In the case
 
 sub judice
 
 , the uncontroverted facts found by the trial court during the suppression motion hearing were that
 

 [t]he defendant called Detective Hartley. She told him she would like to have him come in. He said he would come that same day. And in fact, he did report to the Caldwell County Sheriff's [Department]. He was not told upon his arrival that he was under arrest or in custody, but he was not told that he was free to leave. He indicated that he was feeling sick to his stomach, but he voluntarily walked into the interview room, and he talked with Detective Hartley for approximately 42 minutes. He answered her questions. He never requested an attorney. He did not ask if he was free to leave. He didn't ask if he was under arrest. He did not request water or use of a restroom. He was not handcuffed or shackled.
 

 Looking at the circumstances surrounding Defendant's videotaped interview, there was neither a formal arrest nor a restraint on freedom of movement of the degree associated with a formal arrest. Here, Defendant contacted Detective Hartley and voluntarily traveled to the Caldwell County Sheriff's Department. Detective Hartley invited Defendant to speak with her and he followed her to the interview room. Defendant was not handcuffed or restrained in any way, and the interview room door and hallway doors were not locked. Defendant neither asked to leave, nor expressed any reservations about speaking with Detective Hartley. Furthermore, a reasonable person in the Defendant's position would not have understood this to be custodial interrogation because there were no indicia of a formal arrest.
 

 In
 
 State v. Jones
 
 ,
 
 153 N.C.App. 358
 
 ,
 
 570 S.E.2d 128
 
 (2002), "this Court affirmed the trial court's determination that defendant was not in custody where the defendant voluntarily accompanied police officers to the police department for an interview, was not handcuffed, was told he was not under arrest, was offered the use of the bathroom, no threats or promises were made, and defendant was left unattended while the interviewing officers took a break."
 
 Rooks
 
 ,
 
 196 N.C.App. at 150-51
 
 ,
 
 674 S.E.2d at
 
 741 (citing
 
 Jones
 
 ,
 
 153 N.C.App. at 365-66
 
 ,
 
 570 S.E.2d at
 
 134 ). While some of the factors noted in
 
 Jones
 
 were not present in this case, such as the offer to use the bathroom and informing the defendant that he was not under arrest, these are not sufficient to convert Defendant's questioning into custodial interrogation when reviewing all of the circumstances present in this case, especially when reviewing this contention of error for plain error. Therefore, the trial court did not err in its denial of Defendant's suppression motion because the videotaped interview of Defendant was a voluntary statement, not the result of custodial interrogation to which
 
 Miranda
 

 *345
 
 would apply. This contention of error is overruled.
 

 B.
 
 Rule 412 : Relevance of Past Sexual Conduct of Complainant
 

 Defendant contends in his second and final assignment of error that the trial court erred by denying his request to question Cindy about her prior general sexual history. Defendant argues that because Cindy's medical injuries corroborated her accusations against Defendant, her sexual history provided an alternative explanation for the medical evidence and was beyond the protections of North Carolina's Rape Shield Law. We disagree.
 

 "While a defendant clearly is entitled to cross-examine an adverse witness, the scope of that cross-examination lies within the 'sound discretion of the trial court, and its rulings thereon will not be disturbed absent a showing of abuse of discretion.' "
 
 State v. Dorton
 
 ,
 
 172 N.C.App. 759
 
 , 766,
 
 617 S.E.2d 97
 
 , 102 (2005) (quoting
 
 State v. Herring
 
 ,
 
 322 N.C. 733
 
 , 743-44,
 
 370 S.E.2d 363
 
 , 370 (1988) ). "When cross-examination involves the sexual behavior of the complainant, our Rape Shield Statute further limits the scope of cross-examination by declaring such examination to be irrelevant to any issue in the prosecution except in four very narrow situations."
 

 Id.
 

 (citations and internal quotation marks omitted).
 

 This state's Rape Shield Statute is embodied in North Carolina Rules of Evidence, Rule 412(b), which provides:
 

 (b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
 

 (1) Was between the complainant and the defendant; or
 

 (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or
 

 (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or
 

 (4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.
 

 Without a determination by the court that the sexual behavior is relevant under Rule 412(b), no such evidence may be introduced in any trial of a charge of rape or a sex offense. N.C. R. Evid. 412(d).
 
 [2]
 
 Before the defense can make such an offer of proof to allow the trial court to make this determination, as the proponent of the evidence, the Defendant
 

 shall first apply to the court for a determination of the relevance of the sexual behavior to which it relates. The proponent of such evidence may make application either prior to trial pursuant to G.S. 15A-952, or during the trial at the time when the proponent desires to introduce such evidence. When application is made, the court shall conduct an in camera hearing, which shall be transcribed, to consider the proponent's offer of proof and the argument
 
 *346
 
 of counsel, including any counsel for the complainant, to determine the extent to which such behavior is relevant. In the hearing, the proponent of the evidence shall establish the basis of admissibility of such evidence.
 

 State v. Mason
 
 ,
 
 315 N.C. 724
 
 , 728-29,
 
 340 S.E.2d 430
 
 , 433 (1986) (citing N.C. R. Evid. 412 ). Here, Defendant made no application to the court for a determination of the relevance of the sexual behavior about which Defendant wished to question Cindy. Consequently, the trial court did not conduct an
 
 in camera
 
 hearing on the issue. Thus, Defendant failed to establish the admissibility of evidence of the complainant's past sexual behavior.
 

 Our Supreme Court has held that:
 

 [i]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record. We also held that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred.
 

 State v. Raines
 
 ,
 
 362 N.C. 1
 
 , 20,
 
 653 S.E.2d 126
 
 , 138 (2007) (citations and quotation marks omitted). "In the absence of an adequate offer of proof, we can only speculate as to what the witness' answer would have been."
 
 State v. Barton
 
 ,
 
 335 N.C. 741
 
 , 749,
 
 441 S.E.2d 306
 
 , 310-11 (1994) (citation, quotation marks, and brackets omitted). "It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify."
 
 State v. Johnson
 
 ,
 
 340 N.C. 32
 
 , 49,
 
 455 S.E.2d 644
 
 , 653 (1995) (citation and quotation marks omitted).
 

 Because Defendant did not make an offer of proof to show what Cindy's response to questions about her past sexual behavior would have been, he has failed to preserve this issue for appellate review. Any attempt by this Court to presume the substance or prejudicial effect of the excluded evidence would be speculation. This assignment of error is therefore overruled.
 

 Conclusion
 

 Having considered and rejected all of Defendant's assignments of error, and after a thorough and careful review of the record, transcripts, and briefs, we conclude that Defendant received a fair trial, free from error.
 

 NO ERROR.
 

 Chief Judge MCGEE and Judge DAVIS concur.
 

 [1]
 

 The pseudonym "Cindy" has been used throughout to protect the identity of the juvenile victim pursuant to Rule 3.1(b) of the North Carolina Rules of Appellate Procedure.
 

 [2]
 

 This Court has also held that "there may be circumstances where evidence which touches on the sexual behavior of the complainant may be admissible even though it does not fall within one of the categories in the Rape Shield Statute."
 
 State v. Martin
 
 , --- N.C.App. ----, ----,
 
 774 S.E.2d 330
 
 , 335 (2015). For example, in
 
 Martin
 
 , we ruled that the trial court had erred in refusing to admit evidence that the defendant, a football coach convicted of sexually assaulting a minor, had caught the minor engaging in sexual acts in a locker room even though the evidence did not fall within one of the four exceptions contained in the Rape Shield Law. Our holding was based on the fact that his defense to the charges against him "was that he did not engage in any sexual behavior with [the minor] but that [she] fabricated the story to hide the fact that defendant caught her performing oral sex on the football players in the locker room."
 

 Id.
 

 at ----,
 
 774 S.E.2d at 336
 
 . However, in the present case Defendant has not presented evidence that would trigger the rule discussed in
 
 Martin
 
 .